Lawrence Mark GAVIN, Appellant,

v.

Margaret M. HECKLER, Secretary of Health and Human Services of the United States, Appellee.

No. 85–2506.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1986.

Decided Feb. 13, 1987.

Robert W. Pratt, Des Moines, Iowa, for appellant.

Robert C. Dopf, Asst. U.S. Atty., Des Moines, Iowa, for appellee.

Before LAY, Chief Judge, FAGG, Circuit Judge, and TIMBERS,* Senior Circuit Judge.

LAY, Chief Judge.

Lawrence Gavin appeals from the judgment of the district court[1] entered in favor of the Secretary of Health and Human Services denying him disability benefits under 42 U.S.C. § 423 (1982).

**Background**

Lawrence Gavin is a thirty-five year old man with a history of mental disorders as well as alcohol and drug related problems. Gavin's employment history shows odd factory related work with no sustained period of employment. In 1972, he was admitted to the Mount Pleasant Mental Health Institute where he was diagnosed as suffering from inadequate personality disorder and episodic excessive drinking. The staff psychiatrist gave Gavin a poor prognosis. In 1975, Gavin was again admitted to Mount Pleasant for "bad nerves" and impotency problems. He was diagnosed as suffering from inadequate personality disorder, alcoholism, and neurosis anxiety. In 1976, he was again evaluated at Mount Pleasant. On this admission he was examined as to his mental competency to stand trial following his arrest for passing a number of bad checks. The records showed that Gavin was rebellious, moody, and hostile, but the staff found no organic brain syndrome or thought disorder. He was given a diagnosis of antisocial personality, inadequate personality, and alcoholism, but was found competent to stand trial.

In 1978, Gavin was admitted to the Clarinda Mental Health Institute where he

---

* The HONORABLE WILLIAM H. TIMBERS, Senior Circuit Judge, United States Court of Appeals for the Second Circuit, sitting by designation.

1. The Honorable Harold D. Vietor, United States District Court for the Southern District of Iowa, presiding.

spent thirty days in lieu of a forty-four day jail sentence for again writing bad checks. The Clarinda institute's final diagnosis was inadequate personality disorder and dis-social behavior. A report dated July 24, 1979, from the Menard Psychiatric Center following a beating and homosexual attack in the county jail diagnosed an inadequate personality disorder, an adjustment reaction to adult life, and mild depression. Gavin was later transferred to the Alton Mental Health Center in Illinois where he was diagnosed as suffering from schizo-affective schizophrenia.

Shortly after leaving Alton, Gavin applied for disability insurance benefits with the Department of Health and Human Services. At the Department's request, a Menard psychiatrist, Dr. N. Vallabhenani, provided a history of Gavin and opined that Gavin has very poor self-esteem but does not suffer from an intellectual impairment. He felt, however, that under stress, Gavin became more bizarre and disorganized. A consultative examination was also performed by Dr. David G. Windsor who found that Gavin has a chronic, severe disturbance resembling paranoid schizophrenia which, under stress, can develop into a full-blown psychosis. He found Gavin's awareness of his problem to be quite limited. Apparently on the basis of Dr. Windsor's November, 1979, diagnosis, the Secretary awarded Gavin disability benefits.

In April of 1981, the disability benefits were terminated. Gavin had been reevaluated by Dr. Steve Paden, who found no active signs of schizophrenia nor any other signs of formal thought disorder. He found anxiety symptoms but no indication of clinical depression. His diagnosis was: (1) borderline personality disorder; and (2) adult antisocial behavior. It was apparently this evaluation that formed the basis for the Secretary's termination of benefits. However, Dr. Paden's report provides a rather dubious basis for denial of benefits. He wrote:

> Regarding his ability to follow instructions, this would seem to be intact. However, his ability to work with supervisors and co-workers and carrying out

instructions would be significantly impaired because of his very anxious restless hyperactive state. It is well documented that very low level of stress can precipitate significant decompensation for this gentleman.

In February, 1982, Gavin attempted suicide, his third such attempt, by drug overdose. Two months later, he was again arrested for writing bad checks. He was convicted of this offense in February, 1983, immediately after which he was evaluated by Dr. Richard Lee at the Iowa State Men's Reformatory. Lee found no psychosis, but did note alcohol and multiple drug abuse, as well as anti-social personality.

In September, 1983, Gavin again filed an application for disability benefits with the Department of Health and Human Services. This application is the subject of the present appeal. Both the original application and his application for reconsideration were denied by the Secretary, who found that Gavin's mental impairment would place significant restrictions only on his ability to deal with work pressure in a work setting. The ALJ found contradictory evidence in the record as to whether Gavin could pursue any gainful employment and that Gavin was able to carry out his past relevant work functions of simple, routine, repetitive, unskilled work. Gavin's request to the Appeals Counsel for review was denied. On appeal, the district court found, based upon Magistrate R.E. Longstaff's Report and Recommendation, that the Secretary's decision was supported by substantial evidence. Gavin now appeals to this court.

**Discussion**

Based upon our review of the record, we hold that the Secretary's finding that Gavin is not disabled is not supported by substantial evidence on the record as a whole. We find the district court failed to properly analyze the overall record and that substantial evidence on the record as a whole supports a finding of disability within the meaning of the Social Security Act.

■ The ALJ specifically found that Gavin has the residual functional capacity to perform his past relevant work as a general factory laborer. The only limitations the ALJ found with respect to Gavin's work capabilities were that he is unable to handle work-related stress and pressure. The record speaks to the contrary. Over a time span of more than a decade, the record shows Gavin has been diagnosed by different psychiatrists at different mental health facilities as suffering from, among other things, inadequate personality disorder.[2] These diagnoses also included postulations of schizophrenia, anti-social personality, alcohol and drug abuse, and passive-aggressive personality disorder. He has a poor work record and has consistently shown an inability to keep his temper under control on the job. Numerous psychiatrists and vocational rehabilitation personnel verify that Gavin is mentally and emotionally incapable of handling job-related stress.[3] Dr. Karl Northwall's opinion that Gavin may be employable in a sheltered setting is of little value to our determination. We have stated that "the possibility of 'work in a sheltered workshop is not substantial evidence supporting a denial of disability benefits.'" *Rush v. Secretary of Health and Human Services*, 738 F.2d 909, 916 (8th Cir.1984) (quoting *Van Horn v. Heckler*, 717 F.2d 1196, 1199 (8th Cir. 1983)).

A functional non-psychotic disorder qualifies as an impairment if it is manifested by recurrent and persistent periods of anxiety with tension and apprehension, which result in a restriction of daily activities and constriction of interests and deterioration in personal habits and seriously impaired ability to relate to other people. *Bailey v. Califano*, 614 F.2d 146, 150 (8th Cir.1980). While we do not pass on the weight of the evidence presented in this case, there is substantial evidence to implicate the above definition. The appropriate test in cases involving mental impairments "is whether the mental impairment is of such severity that plaintiff cannot, or could not on his last eligibility date, engage in any substantial gainful employment." *Dunlap v. Harris*, 649 F.2d 637, 638–39 (8th Cir.1981).

Since the district court adopted the magistrate's findings and analysis, we will refer to those findings throughout our discussion. The magistrate agrees with the ALJ that the evidence is contradictory and bases his recommendation to affirm the ALJ's decision on this finding. The Secretary argues that where there is conflicting evidence, the ALJ's finding is conclusive on review by judicial officers. *Beasley v. Califano*, 608 F.2d 1162, 1166 (8th Cir.1979). The magistrate adopted this reasoning and concluded that there exists *"substantial evidence"* from physicians and vocational counselors "to support the ALJ's findings

**2.** In *Tennant v. Schweiker*, 682 F.2d 707, 708 (8th Cir.1982), we noted:

The *Diagnostic and Statistical Manual of Mental Disorders* published by the American Psychiatric Association defines "inadequate personality" as a "behavior pattern characterized by ineffectual responses to emotional, social, intellectual and physical demands." A person with this disorder may seem "neither physically nor mentally deficient," but will "manifest inadaptibility, ineptness, poor judgment, social instability and a lack of physical and emotional stamina."

**3.** In determining Gavin's residual functional capacity, careful consideration must be given to Gavin's ability to find and hold a job in a work environment. *Parsons v. Heckler*, 739 F.2d 1334, 1340 (8th Cir.1984). He must be able to perform a full range of work on a sustained basis "in the sometimes competitive and stress-ful conditions in which real people work in the real world." *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir.1982); *see also Anderson v. Heckler*, 738 F.2d 959, 960 (8th Cir.1984). As has been previously observed "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance; they will not unduly risk increasing their health and liability insurance costs" by hiring someone with severe mental problems. *Thomas v. Celebrezze*, 331 F.2d 541, 546 (4th Cir.1964) (cited with approval in *Parsons*, 739 F.2d at 1340). Since psychiatric impairments are considered nonexertional in character, *e.g., Benson v. Heckler*, 780 F.2d 16, 18 (8th Cir.1985); *Clark v. Heckler*, 733 F.2d 65, 69 (8th Cir.1984), they require vocational expert testimony to prove that jobs are available in the national economy that the claimant can perform. *Parsons*, 739 F.2d at 1339–40; *Haynes v. Heckler*, 716 F.2d 483, 485 (8th Cir. 1983).

that he is capable of returning to his former employment."[4] (Emphasis added). Based on this determination, the magistrate recommended that the Secretary's decision be affirmed as it was supported by "substantial evidence in the record as a whole."

We believe, however, that the magistrate failed to review the record in the manner dictated by precedent of both this court and the United States Supreme Court. It is not sufficient for the district court to simply say there exists substantial evidence supporting the Secretary and therefore the Secretary must be sustained. The substantial evidence test employed in reviewing administrative findings is more than a mere search of the record for evidence supporting the Secretary's findings. *Parsons v. Heckler*, 739 F.2d 1334, 1339 (8th Cir.1984). While such a broad-based search is appropriate where a reviewing court considers the sufficiency of evidence to support a jury's verdict, *see, e.g., DeWitt v. Brown*, 669 F.2d 516, 523 (8th Cir.1982) ("a jury verdict will be sustained so long as there is 'substantial evidence' or 'a reasonable basis in fact' for the jury's conclusion") (quoting *Gisriel v. Uniroyal, Inc.*, 517 F.2d 699, 701 n. 6 (8th Cir.1975)), it is not to be employed on review of an administrative decision.

There is a notable difference between "substantial evidence" and "substantial evidence on the record as a whole." *See Jackson v. Hartford Accident and Indemnity Co.*, 422 F.2d 1272, 1277 (8th Cir.) (Lay, J., concurring), *cert. denied*, 400 U.S. 855, 91 S.Ct. 86, 27 L.Ed.2d 92 (1970). "Substantial evidence" is merely such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. National Labor Relations Bd.*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Smith v. Schweiker*, 728 F.2d 1158, 1162 (8th Cir.1984). "Substantial evidence on the record as a whole," however, requires a more scrutinizing analysis. *Smith v. Heckler*, 735 F.2d 312, 315 (8th Cir.1984). In the review of an administrative decision, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. National Labor Relations Bd.*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory. *See Steadman v. Securities and Exchange Commission*, 450 U.S. 91, 99, 101 S.Ct. 999, 1006, 67 L.Ed.2d 69 (1981). It follows that the only way a reviewing court can determine if the entire record was taken into consideration is for the district court to evaluate in detail the evidence it used in making its decision and how any contradictory evidence balances out.

In the present case, although the magistrate stated that the Secretary's decision "is supported by substantial evidence in the record as a whole," his analysis lacks the searching inquiry required by *Universal Camera*. The evidence cited by the magistrate supporting his recommendation that the Secretary's decision be affirmed is lacking in foundation to a great extent and carries little weight when contrasted with the objective proof supporting a finding of disability. First much of the alleged contradictory evidence relied upon by the magistrate predates the Social Security Administration's award of disability payments to Gavin on December 21, 1979. The magistrate cites certain pages in the record containing a psychological evaluation dated February 24, 1976, a Clarinda Medical Hospital psychiatric report of July 21, 1978, Dr. Vallabhenani's report of November 13, 1979, and Dr. Windsor's report of November 30, 1979 (which, contrary to the magistrate's suggestions, finds that the claimant was unemployable). Little or no weight should be given to some of the pre–1979

---

4. The magistrate also found that the claimant did not fall within the standard relating to alcohol addiction set forth in *Adams v. Weinberger*, 548 F.2d 239 (8th Cir.1977), which states: "In the case of alcoholism, the emphasis should be placed on whether the claimant is addicted to alcohol and as a consequence has lost voluntary ability to control its use." *Id.* at 244. The evidence is, however, that the claimant drinks two to two and a half fifths of alcohol a day.

statements. Section 405(h) of Title 42 provides: "The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided." 42 U.S.C. § 405(h) (1982). Thus, once a decision on a disability claim becomes final, "if it is not appealed to the district court pursuant to 42 U.S.C. § 405(g), it may not be reviewed by the district court as part of its review of another, subsequent decision by the Secretary." *Wilson v. Califano,* 580 F.2d 208, 211 (6th Cir.1978) (involving subsequent review of Secretary's denial of disability benefits).

■ In this case, the ALJ, in making his decision, took into account evidence pre-dating 1979 which was contrary to the Secretary's award of benefits at that time. For the ALJ to accord as much weight as he did to that evidence undermines the underlying policy of section 405(h) that the Secretary's decisions be final. It appears that the ALJ has reevaluated the evidence presented at the 1979 hearing. The doctrine of collateral estoppel, applicable here, forbids this. *Cf. University of Tennessee v. Elliott,* —— U.S. ——, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). The same analysis must apply to the Secretary's 1981 decision that Gavin was no longer disabled.

This leaves only three reports cited by the magistrate which allegedly contradict the record supporting disability. The first is a rehabilitation counselor's report made on April 11, 1983. The counselor, in listing Gavin's employment history, states that the claimant would like to go back to work where there is no pressure on the job. But this fails to credit the same counselor's observation on a subsequent page that Gavin's "chances for finding competitive employment, with his current self-defeat-. ing attitude, is virtually nil." In the same file another counselor concludes "this is a

sick man and he has been sick for a long time."

■ Second, the magistrate cites to a psychiatric evaluation made by Dr. Michael Taylor on October 4, 1983, which was requested by the Secretary. Taylor's report indicates that there exists "no psychiatric impairment in his ability to perform daily activities, a moderate constriction of interests, no deterioration in his personal habits * * *." [5] The report continues, "he appears capable of managing benefit payments in his own behalf." [6] We question whether this statement is intended to appraise Gavin's ability to engage in substantial gainful activity. Regardless, the telling assessment of Dr. Taylor's evaluation is that he was given no medical history or record, other than what Gavin relayed to him, on which to base a diagnosis. He commences his letter by saying "No medical information was available for my review," and concludes his letter by saying, "I have insufficient information upon which to base a specific diagnosis." This admission seriously undermines Dr. Taylor's diagnosis.

The final evidence relied upon by the magistrate is a psychiatric and physical examination made by the VA in October and November of 1983. The psychiatric examination concludes: "Veteran appears to be looking for easy answers to problems which require little work from him." It then mentions his alcohol problem and relates that he has a mixed personality disorder and has a "history of psychiatric problems." The physical examination showed "slight impairment."

■ Although the magistrate did not cite a VA determination made in March 1983, that the claimant was not disabled, the ALJ did refer to it, although it is uncertain whether the ALJ gave it much weight. We have reviewed that determination as part of the overall record and find it deserves little weight. The VA record is primarily

---

5. This surprising statement contradicts the entire medical history and record.

6. Many reports throughout Gavin's history question whether Gavin is competent to manage his disability payments.

made up of only VA reports;[7] no mention is made of the claimant's past history and determination of total disability by the Secretary in December 1979.[8]

The ALJ found the determination of the VA Board on March 31 refusing a VA disability pension "significant." It is clear however that the VA record did not contain the in-depth medical history provided the Secretary in 1979, nor does it include the state clinical evaluations of the hospitalizations and subsequent diagnosis made in 1984.

Whatever assessment that might be given to these alleged "contradictory" reports, they do not support the Secretary's ruling when considered with the overall record. As our analysis shows, these reports deserve little weight. The recent report of Dr. Northwall, dated April 3, 1984, which finds the claimant unemployable,[9] and the April 1984 medical record of the VA hospital set forth above, in which the chief psychologist agrees with that finding, remain uncontradicted.

■ When the record is thus analyzed, we find little or no substantial evidence on the record as a whole to support the Secretary. Ordinarily, where the Secretary has incorrectly allocated the burden of proof based upon an erroneous finding that the claimant can return to his prior work, we will remand for further proceedings. However, where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his disability by medical evidence on the record as a whole, we find no need to remand. *E.g.,* *Cook v. Bowen,* 797 F.2d 687, 691 (8th Cir.1986); *Smith v. Heckler,* 735 F.2d 312, 318 (8th Cir.1984).

---

7. Significant to our review is a statement by the VA Board of Veteran Appeals: "A Veterans Administration psychiatrist in letters written in December 1981 related that he felt the veteran had a probable major depressive disorder and, given his past record, the possibility of his obtaining and keeping gainful employment was minimal."

8. But the March, 1983, VA report must be discounted by the VA report of April, 1984, wherein the chief psychologist reports:

   It is this counselor's opinion, based on the needs of a work community, that this veteran is certainly psychologically disabled *and not employable.* There is little doubt that employers would certainly not select this veteran with the kind of institutional background that he has. As a result, this counselor recommended that he go ahead with his pursuit of reinstatement of SSI and then to pursue further with his social worker the possibility of a transfer into the domiciliary system. If he is able to get into a domiciliary, then he might stand a chance of being able to function without having to resort to criminal activity in hunting of employment without going through a Job Service Agency. The only way this veteran is going to be able to obtain employment is where he can get into some type of very menial labor type of work where work history and background is not necessarily requested or required. *There is little in the way of vocational services that could be provided this veteran at this medical center as his work background is such that there are few, if any, who would even touch him as a prospective applicant.* This veteran states he has been told by Job Service personnel that they would go through the motions of taking application, but there is little chance, if any, of being able to help him to even obtain an interview let alone become employed. (Emphasis added).

9. Dr. Northwall states:

   It is my opinion that Mr. Gavin is indeed a very incompetent human being and has been so throughout his life. It is quite unlikely that he would be able to function in other than a structured environment. I feel his ability to get along in society is severely impaired. Presently, he is having recurrent and persistent periods of anxiety with tension, apprehension and some interference with concentration. This largely is being related to his uncertainty about the future.

   He has persistent deeply ingrained maladaptive patterns of behavior which are manifested by a pathological degree of seclusiveness as well as suspiciousness. I feel also that his daily activities and interests are constricted and that he does show some habit deterioration and he certainly has a very seriously impairitability [sic] to relate to people. In fact, his interpersonal style of relating which seems to be calculated to confirming people's bad opinion about himself, then validates his own poor opinion of himself. I doubt this individual would ever be trainable into any kind of employable position except in a sheltered setting. I would also advise some type of goup [sic] home setting be found for him. I feel that he definitely is not capable of functioning independently.

Here, it should be obvious that a remand would be a futile gesture. We therefore vacate the judgment for the Secretary and direct the district court to enter judgment in favor of the claimant.

FAGG, Circuit Judge, dissenting.

Because I would not preclude the Secretary from attempting to show Gavin is capable of doing other work, I respectfully dissent.

I agree with the court the record does not support the ALJ's finding that Gavin is able to return to his former work and is thus not disabled. Although Gavin is on the whole physically able to work and has expressed a desire to do so, it is clear he cannot return to work as a general factory laborer because of his reactions to stress in that type of working environment. I do not, however, agree with the court "that it [is] obvious that a remand would be a futile gesture." *Ante* at 1202.

If Gavin is unable to return to his former work, our cases require the Secretary to assume the burden of proving that other jobs exist in the national economy for a claimant with Gavin's vocational characteristics. *See Edwards v. Secretary,* 809 F.2d 506, 507 (8th Cir.1987); *Tucker v. Heckler,* 776 F.2d 793, 795–96 (8th Cir.1985). Because the ALJ focused on Gavin's ability to return to his former work, the Secretary was not put to the task of showing Gavin nevertheless could perform other work. Thus, the Secretary did not utilize vocational evidence to establish whether there are stress-free jobs available in the national economy and, if there are, whether Gavin can perform those jobs in light of his personality and behavioral disorders and his individualized reaction to job stress. *See O'Leary v. Schweiker,* 710 F.2d 1334, 1338 (8th Cir.1983); *Lancellotta v. Secretary,* 806 F.2d 284, 285, 287 (1st Cir.1986).

Although Gavin cannot return to his former work, "it is better that the Secretary be allowed to explore other evidentiary means to establish what jobs exist that [Gavin] might still pursue." *Kirksey v. Heckler,* 808 F.2d 690, 694 (8th Cir.1987). I would remand this case to permit the Secretary this opportunity.