Margie BRYANT, Appellant,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Appellee.

No. 88–2567.

United States Court of Appeals, Eighth Circuit.

Submitted May 10, 1989.

Decided Aug. 21, 1989.

Kenneth F. Dolezal, Cedar Rapids, Iowa, for appellant.

Charles W. Larson, Cedar Rapids, Iowa, for appellee.

Before MAGILL and BEAM, Circuit Judges, and HEANEY, Senior Circuit Judge.

HEANEY, Senior Circuit Judge.

Margie Bryant seeks disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* and supplemental security benefits under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.* She appeals an order of the district court affirming the Secretary's denial of benefits. We reverse.

BACKGROUND

This case involves a woman who, after several years of transient living, seeks supplemental income based on a physical and mental inability to engage in substantial gainful activity.

Bryant is forty-eight years old, stands 5′3″ in height and weighs approximately 224 pounds. She has suffered from varicose veins, diverticulosis, chronic back pain and irritable bowel syndrome for several years. She has experienced ulcers on her legs, gall stones and bleeding gums. She also suffers from degenerative changes of the thoracic and lumbar spine and obesity.

Bryant dropped out of school in the eighth grade and worked as a waitress for several years. At age 19, Bryant married, but she divorced a year later after she accidentally shot her husband in the shoulder during an argument. She was placed on probation as a result of this incident. In 1971, Bryant's problems with varicose

veins forced her to leave her job as a waitress, and she successfully sought social security disability. These benefits were terminated in 1973 when Bryant took a job as an office helper at a sign company. Bryant left this job to move to Cedar Rapids in 1975.

In 1976, Bryant received a G.E.D. from the Kirkwood Community Center. From 1977 through 1981, Bryant was a client of the Iowa State Vocational Rehabilitation Services and attended approximately three years of college classes in a clerical receptionist program at Kirkwood Community College. While the school attempted to provide Bryant with financial and emotional support during her tenure at Kirkwood, she failed many classes and never received a degree or certificate. During this time, she worked part time at the school's health occupations department and library on a work-study program. Apparently, during her years at the school, Bryant regularly had disagreements and arguments with authority figures at CETA, at the Kirkwood Skills Center, and in the school's secretarial program.

Between 1981 and 1985, Bryant left Kirkwood and did not maintain any permanent address. She apparently lived on the streets or with acquaintances when they would take her in. She sought a volunteer position, shelving books at the Mercy Hospital Library in early 1981. Carol Stalberger, director of volunteers at the hospital, stated that Bryant was volunteering when she was evicted from her apartment. According to Stalberger, Bryant began living on the streets and carried all of her personal belongings in a grocery cart. Stalberger noted that Bryant was "basically unemployable" at that time, and she left the hospital after a few months.

In April 1985, when Bryant's transient living conditions deteriorated to the point where she spent most nights on the streets,

Bryant allowed her representative to arrange for her admission to the Abbe Center for Community Care on an emergency basis. She has remained there ever since. The Center, formerly known as the Linn County Care Facility, is a statutorily authorized facility which provides residential and medical care to indigent persons who are unable to take care of themselves. *See* Iowa Code Ann. § 253.1 *et seq.* At present, Bryant works at the Center's dining room, cleaning tables three hours a day, earning $1.70 an hour.

The medical evidence indicates that Bryant has suffered some impairment due to varicose veins and leg ulcers since 1971. She has also experienced low back pain since 1979. Degenerative changes in her lumbar spine were first detected in 1985. Similarly, Bryant has battled gastrointestinal problems since early 1979 and later she was diagnosed as suffering from irritable bowel syndrome.

Bryant underwent intelligence testing in 1978, the results of which revealed a verbal IQ of 97, a performance IQ of 86 and a full scale IQ of 91. Reading tests revealed problems in associations which would impede Bryant's progress in competitive situations such as college. In 1985, Bryant was diagnosed by Dr. Patricia Rooney–Rebeck, a clinical psychologist, as suffering from "atypical facitious disorder with physical symptoms." [1] Psychologist Quentin R. Sabotta also examined Bryant in 1985 and found her to have a markedly neurotic personality. Ellie Snavely, a psychologist and Bryant's former vocational counselor at Kirkwood, performed psychological testing of Bryant on July 20, 1987. Using the results from a Minnesota Multiphasic Personality Inventory (MMPI), Snavely diagnosed Bryant as suffering from a passive-aggressive personality disorder.[2] This diagnosis was subsequently confirmed by Dr. Jack Dodd, a consulting psychiatrist.

---

1. The essential feature of this disorder is intentional production of physical symptoms. The symptoms may be fabricated, self-inflicted or exaggerations of pre-existing physical conditions. This disorder is extremely incapacitating, as it prevents the person from maintaining steady employment, family ties or lasting interpersonal relationships. *See Diagnostic and Sta-*

*tistical Manual of Mental Disorders,* 316–17 (3d ed.—Revised 1987) (*DSM–III–R*).

2. The essential feature of this disorder is a pervasive pattern of passive resistance to demands for adequate social and occupational performance, beginning in early adulthood. The resist-

Bryant testified at the hearing that she could walk two to four miles, could stand only five to ten minutes, could sit for only thirty to sixty minutes, could lift only fifteen pounds and could occasionally bend, stoop and squat. She related having difficulty getting along with others at the Abbe Center and having difficulty tolerating stress. Snavely testified that Bryant's intellectual testing indicated that she would have a great deal of difficulty learning technical terms. She noted that Bryant's anxiety level was elevated, that Bryant would be unable to work in a team situation, and that she would need a low stress working environment.

DISCUSSION

The ALJ found that Bryant was not engaged in substantial gainful activity, that her impairments did not meet or equal impairments listed in Appendix 1, and that Bryant has the residual functional capacity to perform the sedentary work of an office helper as that job is performed in the national economy.[3]

The only issue on appeal is whether this decision is supported by substantial evidence on the record as a whole. After carefully reviewing the medical and psychological evidence in this record, as well as Bryant's history of unsuccessful work attempts and transient living, we cannot find substantial evidence to support a finding that Bryant is presently able to perform substantial gainful activity or that

she has been able to do so since 1981. We believe the record is replete with evidence indicating Bryant's inability to function on her own, even without the additional burdens of a work environment. Thus, we feel an award of benefits is required in this case.

The ALJ found that Bryant suffers from several major medical impairments which limit her ability to perform even sedentary work. He found:

The claimant has the residual functional capacity to perform the physical exertional and nonexertional requirements of work except for lifting/carrying more than 15 pounds maximum/10 pounds continuously. The claimant can only stand five to ten minutes at a time, sit for 30 to 60 minutes at a time, and walk for 60 minutes at a time. She has to be able to sit and stand at will. She cannot continuously bend/stoop/squat. She must have ready access to a restroom. She cannot do jobs which are very complex-technical, involve more than occasional contact with the public/coworkers/supervisors where there would not be occasional supervision, or where there is stress greater than level "3" on a scale of "1–10" (20 C.F.R. 404.1545 and 416.-945).

Kim Jones, a vocational expert called as a witness by the Secretary, testified that these limitations would not prevent Bryant from working as an office helper as that job is performed in the national economy. We agree that these impairments, if con-

---

ance results in pervasive social and occupational ineffectiveness. *DSM–III–R* at 356.

**3.** A person becomes eligible for disability insurance benefits if she is covered by social security insurance and is unable to engage in any substantial gainful activity due to a physical or mental impairment expected to last 12 months or more. 42 U.S.C. § 416(i). A person becomes eligible for supplemental social security income if she is not covered by social security insurance but is disabled within the meaning of 42 U.S.C. § 416(i) and has an income of less than $1,752 and resources no greater than $1,500. 42 U.S.C. §§ 1382, 1382c(a)(3)(A). In Iowa, a person is eligible for supplemental income from the state only if he or she qualifies for supplemental income from the federal government but has an income level higher than that allowed by federal law. Iowa Code Ann. § 249.3(2) and (3). Thus,

if Bryant does not qualify for federal supplemental income assistance, she may be foreclosed from receiving state aid as well.

To prove a disability under the Social Security Act, a claimant must show that she is not currently engaged in substantial gainful activity, 20 C.F.R. §§ 404.1520(b) and 416.920(b), and that she has an impairment which meets the duration requirement of 12 months and meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, No. 4, Appendix 1. 20 C.F.R. §§ 404.1520(d) and 416.920(d). An alternative method of proving disability is to show that the claimant is unable to perform work that she has done in the past, 20 C.F.R. §§ 404.1520(e) and 416.920(e), and that the impairments preclude her from performing any other substantial gainful activity. 20 C.F.R. §§ 404.1520(f) and 416.-920(f).

sidered alone, would not prevent Bryant from performing some sedentary work.

Yet, it is clear from the record that the ALJ did not seriously consider Bryant's mental instability and the combined effect of her emotional and physical impairments on her ability to perform the work of an office helper. The ALJ has an obligation to consider the combined effect of all of a claimant's impairments. 20 C.F.R. § 404.1522. As we have previously stated:

> Each illness standing alone, measured in the abstract, may not be disabling. But disability claimants are not to be evaluated as having several hypothetical and isolated illnesses. These claimants are real people and entitled to have their disabilities measured in terms of their total physiological well-being.

*Reinhart v. Secretary of Health & Human Services,* 733 F.2d 571, 573 (8th Cir. 1984). The record shows that Bryant has had extreme adjustment difficulties. Psychological examinations performed indicate that Bryant suffers from a passive-aggressive personality disorder. Bryant has in the past demonstrated uncontrolled outbursts of anger and hostility, an inability to tolerate limitations set by authority figures, a resistance to services provided by CETA, Kirkwood and the Center, and a pattern of social isolation. Bryant has been unable to successfully complete vocational rehabilitation. Yet, according to Snavely, Bryant did not lack motivation. Rather, her inability to function at the school resulted from her personality disorder.

Snavely testified at the hearing that the combination of Bryant's personality disorder, physical problems, lack of social skills and deficits in linguistic skills rendered Bryant unemployable. Dr. Dodd, who reviewed Bryant's file and listened to a tape recording of the hearing, agreed with Snavely that Bryant suffered from a personality disorder characterized by limited social skills, poor judgment, a sense of impotence and helplessness, and a high anxiety level with the related psychosomatic illnesses of functional bowel syndrome and obesity. He indicated that Bryant's mental impairment was one of long duration, the early manifestations of which in-cluded her decision to drop out of school, her inability to maintain sustaining relationships, and her poor job history. He concluded "she currently appears disabled and socially isolated." This evidence corroborates Snavely's testimony and explains Bryant's inability to find employment, to complete her course work at Kirkwood and to provide food and shelter for herself.

In light of the fact that Snavely was the only professional to assess Bryant's ability to perform substantial gainful activity by looking to the totality of the circumstances, and that Dr. Dodd confirmed Snavely's medical opinion, we find little evidence on the record as a whole to support the ALJ's decision that Bryant has the mental and physical capacity to perform the work of an office helper.

Because the record in this case establishes that Bryant is unable to perform even sedentary work, we find no need to remand for further factual development. *See Gavin v. Heckler,* 811 F.2d 1195, 1201 (8th Cir.1987) (remand unnecessary when total record overwhelmingly supports finding of disability). Accordingly, we reverse the decision of the district court and remand with instructions to enter a judgment in favor of the claimant.