**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 1 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

MICHAEL D. WILSON,

        Plaintiff-Appellant,

v.

SHIRLEY CHATER, Commissioner,
Social Security Administration[*],

        Defendant-Appellee.

No. 96-6358
(D.C. No. CIV-94-1174-L)
(W.D. Okla.)

ORDER AND JUDGMENT

Before BRORBY, BARRETT, and LUCERO, Circuit Judges.

Claimant Michael D. Wilson appeals from the district court's order

upholding the Secretary's denial of supplemental security income benefits (SSI).

---

[*]    Effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. In the text, however, we continue to refer to the Secretary because she was the appropriate party at the time of the underlying administrative decision.

We exercise our jurisdiction, see 42 U.S.C. § 405(g); 28 U.S.C. § 1291, and affirm.[1]

Mr. Wilson's request for benefits was denied initially and on reconsideration. Following a de novo hearing, Administrative Law Judge (ALJ) Kallsnick determined, at step five of the applicable sequential analysis, 20 C.F.R. § 404.1520; see also Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (setting out five-step sequential analysis), that Mr. Wilson, a former mail handler, retains the ability to perform work existing in the national economy and thus is not disabled within the meaning of the Social Security Act. The Appeals Council denied review, making the ALJ's determination the final decision of the Secretary. The district court affirmed.

On appeal, Mr. Wilson contends that (A) the ALJ failed to give proper consideration to a mental impairment alleged in a prior application for benefits, and (B) the determination of residual functional capacity was not supported by substantial evidence.[2] We review the Secretary's decision to insure that there is

---

[1] This case is unanimously ordered submitted without oral argument pursuant to the applicable rules. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[2] Neither of these issues was presented to the Appeals Council. Nonetheless, we do not apply a waiver rule in this case because, at the time Mr. Wilson

(continued...)

substantial evidence to support her factual findings and that she correctly applied the law. See Bean v. Chater, 77 F.3d 1210, 1213 (10th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Fowler v. Bowen, 876 F.2d 1451, 1453 (10th Cir. 1989) (quotation omitted). When the analysis reaches step five of the evaluation process, the burden is on the Secretary to show that the claimant retains the residual functional capacity to do other work existing in the national economy. Miller v. Chater, 99 F.3d 972, 975 (10th Cir. 1996).

## A.    CONSIDERATION OF MENTAL IMPAIRMENT

Inquiry as to existence of potential mental impairment must be made in context. Mr. Wilson has not worked since he incurred an on-the-job injury to his back and shoulder on October 9, 1986. This appeal concerns his second application for benefits. In the first application, filed in 1986, he claimed that he was disabled due to a back condition, an ulcerated esophagus, and mental depression. On July 25, 1988, ALJ Hargrave denied the first application, determining that Mr. Wilson retained the ability to perform the duties of a mail

---

[2](...continued)
appealed to the Appeals Council, he did not have notice of James v. Chater, 96 F.3d 1341, 1343-44 (10th Cir. 1996) (holding "issues not brought to the attention of the appeals council on administrative review may, given sufficient notice to the claimant, be deemed waived on subsequent judicial review").

handler. Regarding mental impairment, ALJ Hargrave found that: (1) Mr. Wilson had suffered from severe depression, but the depression was not of disabling severity for a continuous period of twelve months; and (2) Mr. Wilson had a passive-aggressive personality disorder, but could engage in a substantial gainful activity that did not require frequent interaction with supervisors. The denial of benefits was upheld on appeal.

In his current application, filed in 1991, Mr. Wilson alleges physical, not mental, impairments. He claims that he has been disabled since April 1, 1991, from his worsening back condition (aggravated by arthritis and a herniated disk), an ulcerated esophagus, peptic ulcers, and bronchial problems. The medical records submitted in support of the request contain no mention of a mental impairment.

At the hearing before ALJ Kallsnick, held September 28, 1993, Mr. Wilson testified that pain from his back condition was the primary reason he could not work, R. Vol. II at 92. He spoke generally about his other claimed physical impairments, id. at 92-95. In response to his attorney's question, he stated that there were no other problems that kept him from working. Id. at 96. It was ALJ Kallsnick who raised the issue of a mental impairment. Noting the past treatment for depression and "some other problems," the ALJ asked Mr. Wilson if he had

-4-

been treated recently for mental problems. R. Vol. II at 105-06. Mr. Wilson stated that his last such treatment was in 1987. Id. at 106.

In the denial determination issued November 15, 1993, ALJ Kallsnick found that the medical evidence did not show a mental impairment that affected Mr. Wilson's residual functional capacity. His ultimate conclusion was that Mr. Wilson could no longer perform his past relevant work, but that he could perform work up to the medium level, except for physical limitations on lifting, bending, stooping, and crawling.

Relying on 42 U.S.C. § 405(h),[3] Mr. Wilson now argues that ALJ Hargrave's previous finding of a passive-aggressive disorder was binding upon ALJ Kallsnick.[4] Under the doctrine of collateral estoppel, embodied in § 405(h),

---

[3] Section 405(h) provides:

> The findings and decision of [the Secretary] after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of [the Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided.

[4] Although Mr. Wilson argues that the doctrine of res judicata should be applied, his argument is actually based on the closely related doctrine of collateral estoppel. Res judicata applies "when there is a final judgment on the merits which precludes the parties . . . from relitigating the issues that were decided or issues that could have been raised in the earlier action." Frandsen v. Westinghouse Corp., 46 F.3d 975, 978 (10th Cir. 1995). In this case, the doctrine of res judicata establishes that Mr. Wilson was not disabled from 1986 to 1988. See Lyle v. Secretary of Health & Human Servs., 700 F.2d 566, 568 (9th Cir. 1983) (holding that the final decision of the Secretary had res judicata effect as of

(continued...)

once an issue of fact or law necessary to a determination has been decided, that decision may preclude relitigation of the issue in a different cause of action. See Allen v. McCurry, 449 U.S. 90, 94 (1980). Collateral estoppel applies only if the issue previously decided is identical to the one presented in the action in question. See Frandsen v. Westinghouse Corp., 46 F.3d 975, 978 (10th Cir. 1995).

Recurring applications for disability benefits generally deal with different periods of time. Because medical conditions and impairments can change, findings as to a claimant's residual functional capacity during one period "[are] not conclusive evidence of [his] residual functional capacity at a later date." Rucker v. Chater, 92 F.3d 492, 495 (7th Cir. 1996). Passage of time may destroy the identity of issues essential to the operation of collateral estoppel.

The record before ALJ Kallsnick included the record before ALJ Hargrave, plus additional evidence, including Mr. Wilson's testimony that he had not sought treatment for a mental impairment since 1987 and that he was not alleging a mental impairment that prevented him from working. As a consequence, the issues at the two hearings were not identical. Accordingly, collateral estoppel

[4](...continued)
the date of the decision)

-6-

does not apply. The determination that Mr. Wilson did not have a mental impairment as of November 15, 1993 is supported by substantial evidence.[5]

In related argument, Mr. Wilson contends that the evidence of mental impairment submitted with the first application for benefits requires the Secretary to follow the procedure for evaluating a mental impairment outlined in 20 C.F.R. § 416.920a. In Hill v. Sullivan, 924 F.2d 972, 975 (10th Cir. 1991) (concerning 20 C.F.R. § 404.1520a, the disability counterpart to § 416.920a), we held that this particular procedure, including the completion of the standard mental impairment assessment form, see 20 C.F.R. § 416.920a(d), must be followed whenever the record contains evidence of a mental impairment that "allegedly prevented

_____

[5] We have reviewed the cases cited by Mr. Wilson as support for his collateral estoppel argument, and we find them readily distinguishable. See Dennard v. Secretary of Health & Human Servs., 907 F.2d 598, 600 (6th Cir. 1990) (holding that collateral estoppel precluded inconsistent findings about the exertional level of the claimant's former job); Lively v. Secretary of Health & Human Servs., 820 F.2d 1391, 1392 (4th Cir. 1987) (observing that claimant filed his second application just two weeks after the ALJ's denial of his first application and that it was "utterly inconceivable" that his condition had significantly improved in that period of time); Gavin v. Heckler, 811 F.2d 1195, 1200 (8th Cir. 1987) (holding that collateral estoppel precluded the ALJ's reevaluation of the evidence presented at the earlier hearing). Mr. Wilson's applications were five years apart and a change in his physical and mental condition may be anticipated, although a change in the exertional requirements of his former job may not be. ALJ Kallsnick did not reevaluate evidence from the first hearing; he examined the record as it existed after the second hearing. See Warren v. Bowen, 804 F.2d 1120, 1121 (9th Cir. 1986), amended on denial of reh'g, 817 F.2d 63 (9th Cir. 1987) (Secretary is "not contesting the existence of [claimant's already established] disability in 1978; what [s]he is contesting is [claimant's] disability when she reapplied for SSI in 1981.").

claimant from working." That holding has no place here: the claimant specifically denied that a mental impairment kept him from working. It follows that ALJ Kallsnick was not required to follow that procedure.

## B.    DETERMINATION OF RESIDUAL FUNCTIONAL CAPACITY

Mr. Wilson asserts that ALJ Kallsnick's determination of his residual functional capacity is not supported by substantial evidence for two reasons: (1) the report of Dr. Sutton, who evaluated his residual functional capacity at the request of the ALJ, is legally defective because it is based on an incomplete evaluation of his medical history; and (2) the ALJ did not properly explain his reasons for accepting the evaluation of Dr. Sutton, a consulting physician, rather than the assessments of other consulting or treating physicians. Neither contention justifies setting aside the ALJ's determination.

Dr. Sutton personally examined Mr. Wilson on July 21, 1993, then provided a report on his residual functional capacity. Dr. Sutton's overall impression was that Mr. Wilson did not demonstrate objective evidence of disability, although he probably did have valid back problems and "would not therefore be able to function at the same level as a normal person." R. Vol. II at 505. Dr. Sutton outlined restrictions on lifting, carrying, bending, crawling, and reaching.

The regulation concerning a consultative examination conducted at the Secretary's expense states that the physician conducting the examination will be provided with "any necessary background information about your condition." 20 C.F.R. § 416.917. Dr. Sutton's report did not state that he had reviewed Mr. Wilson's prior medical records. However, the lack of an explicit reference to medical history, standing alone, does not render the report legally insufficient.

Mr. Wilson objects to ALJ Kallsnick's giving controlling weight to Dr. Sutton's report, rather than the reports of treating physicians. "[T]he treating physician rule governs the weight to be accorded the medical opinion of the physician who treated the claimant . . . , including opinions of other physicians," Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995) (quotation omitted). Generally, the opinion of a treating physician must be given substantial weight, and may be disregarded only if the Secretary gives specific and legitimate reasons for doing so. See Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984). The rule does not dictate that a consulting physician's report be given little or no weight if the report is the only medical evidence on the relevant issue. See Reid, 71 F.3d at 374.

Mr. Wilson's treating physicians did not express an opinion on Mr. Wilson's residual functional capacity. Dr. Sutton's report constituted the only evidence on this issue. Accordingly, the ALJ properly relied on the report.

AFFIRMED.

Entered for the Court


Carlos F. Lucero
Circuit Judge