**Aaron G. NATWICK, Plaintiff,**

v.

**Jo Anne B. BARNHARDT, Commissioner of Social Security, Defendant.**

No. A4–02–89.

United States District Court,
D. North Dakota,
Northwestern Division.

June 24, 2003.

Kevin Joseph Chapman, Chapman Law Office, Williston, ND, for plaintiff.

Jennifer Klemetsrud Puhl, U.S. Attorney's Office, Fargo, ND, for defendant.

**ORDER GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

HOVLAND, Chief Judge.

The Plaintiff, Aaron G. Natwick, seeks judicial review of the Social Security Commissioner's decision to deny his applications for disability insurance benefits and supplemental security income. For the reasons outlined below, the Commissioner's decision is affirmed.

## I. PROCEDURAL HISTORY

The plaintiff, Aaron G. Natwick protectively filed applications for disability insurance benefits and supplemental security income benefits in May 2000, alleging that he has been unable to work since November 20, 1999, because of his back condition. (Tr. 76–79). Natwick's applications were denied initially and upon reconsideration. (Tr. 62–79). He subsequently requested an administrative hearing. (Tr. 31). A full hearing was held before an administrative law judge on September 11, 2001. (Tr. 31, 70). The ALJ issued a decision on November 5, 2001, and concluded that Natwick was not disabled within the meaning of the Social Security Act. (Tr. 12–20). The Appeals Council denied Natwick's request for review and adopted the ALJ's conclusion as the Social Security Commissioner's final decision. (Tr. 8–9). On August 9, 2002, Natwick filed a complaint seeking judicial review of the Social Security Commissioner's decision.

## II. BACKGROUND OF THE CASE

Aaron Natwick was born on June 15, 1967. (Tr. 33). He has a high school education and holds a 2–year associates of science degree in diesel mechanics. (Tr.

34–35). Natwick has worked as a service operator, painter/sandblaster, foreman, swapper, surveyor, mechanic, and most recently as an apprentice electrician. (Tr. 142). He has not engaged in substantial gainful activity since November 20, 1999.

In October 1998, Natwick injured his back while unloading a truck. (Tr. 35–36). The physicians who examined Natwick initially recommended a relatively conservative course of treatment. (Tr. 154, 400). Natwick underwent an MRI of his lumbar spine in November 1998, which indicated that he suffered from a mild posterior protrusion of the disc at L5–S1, a mild bulge of the disc at L4–5, and mild to moderate degenerative osteoarthritis at the facet joints bilaterally from the L3 level downward. (Tr. 150–151). The MRI revealed no evidence of acute trauma. (Tr. 151).

On November 17, 1998, Dr. James F. Nabwangu evaluated Naswick and observed that Natwick was protective of his lower back. (Tr. 153). In Dr. Nabwangu's opinion, Natwick had suffered a thoracumbular strain for which he was slow to recover. (Tr. 154). Dr. Nabwangu requested an MRI of Natwick's thorasic spine, explaining that such an examination was needed before he could provide his final recommendation. (Tr. 155).

The MRI requested by Dr. Nabwangu was not performed until April 2000. The MRI revealed central disc herniations in Natwick's thoracic spine at the T6–T7 and T7–T8 levels. (Tr. 163, 166, 395).

On August 11, 1999, Dr. Richard Arazi examined Natwick and recommended a course of treatment consisting of physical therapy, exercise if tolerated, and a minimum amount of analgesics and muscle relaxants for pain control. (Tr. 243). On May 23, 2000, Dr. Arazi examined Natwick again and noted that Natwick continued to suffer from significant back pain. (Tr.

243). Dr. Arazi again recommended a course of treatment consisting of exercise and analgesics. (Tr. 243).

Dr. Arazi next examined Natwick on June 14, 2000, and referred him to Dr. Michael Moore for a surgical consult. (Tr. 241, 393–94). Dr. Moore subsequently evaluated Natwick and opined that he was a suitable surgical candidate. (Tr. 239, 293). On October 30, 2000, Dr. Moore performed surgery on Natwick's spine at the T–6 and T–9 levels. (Tr. 36, 291–94). In a follow-up examination conducted on December 11, 2000, Dr. Arazi observed that Natwick was in a lot of pain but was doing very well. (Tr. 390). Dr. Arazi opined that Natwick would require a long time to heal from surgery but estimated that a return to usual activities in approximately one year was feasible. (Tr. 390).

On April 9, 2001, Dr. Arazi examined Natwick. (Tr. 389). Dr. Arazi observed that Natwick was wearing a body brace, remained uncomfortable, and had difficulty getting up and down. (Tr. 389). In his examination notes, Dr. Arazi stated that Natwick could be expected to heal slowly over a year's time. (Tr. 389).

Although Natwick has complained of persistent back pain since injuring his back in 1998, he maintains that his pain has intensified following back surgery. (Tr. 39). Natwick reports that his pain usually hovers around 3 or 4 on a scale of 1–10, but adds that it occasionally spikes to 10. (Tr. 38). For pain relief, Natwick relies upon ice packs, heat pads, hot showers, and rest. (Tr. 40–41). He has also been prescribed Carisoprodal. (Tr. 108).

Natwick testified at the administrative hearing and said that he seldom gets a good nights sleep on account of his pain. (Tr. 44). Additionally, Natwick testified that he cannot stand more than 20 minutes or sit in one place more than 10 to 15 minutes on account of his condition. (Tr. 41–42, 46). Natwick reportedly develops numbness in his chest and left leg when sitting for extended periods. (Tr. 49). When standing for extended periods, Natwick pain reportedly intensifies, which requires him to lie down. (Tr. 40, 42–43).

Natwick testified that his condition has left him feeling depressed; has impacted his ability to concentrate; and has affected his interaction with others. (Tr. 45–46). For example, Natwick stated that his pain often leaves him feeling edgy and impatient. (Tr. 45, 48). Natwick also testified that he makes an effort to avoid crowds out of concern that someone may accidentally bump into him. (Tr. 45, 48).

Natwick's range of motion and his ability to engage in physical activities has been affected by his condition. (Tr. 49–50). The spinal fusion has restricted his ability to turn or twist his torso from side to side. (Tr. 49–50). Nevertheless, Natwick remains capable of driving. (Tr. 34, 50). He also remains capable of carrying up to ten pounds when required, albeit at the risk of causing additional back pain. (Tr. 47). Additionally, Natwick can walk up to 2 or 3 blocks, depending on the grade and terrain. (Tr. 51).

On a typical day, Natwick may go for a walk, sit and read, or watch television. (Tr. 52). He can also perform a few household chores, such as removing dishes or washing clothes. (Tr. 52). While Natwick is able to care for some of his personal needs, he has required some assistance from family members. (Tr. 134). Natwick has also been dependent upon his family to prepare his meals and do his shopping. (Tr. 134).

Natwick underwent a physical residual functional capacity assessment in August 2000. (Tr. 343). The report of this assessment indicated that Natwick could lift 20 pounds occasionally, lift 10 pounds frequently, could stand and/or walk for a total of 6 hours in an 8–hour day, could sit for a

total of 6 hours in an 8–hour day, was unlimited in his ability to push or pull, and suffered from occasional postural limitations. (Tr. 343–350).

In November 2000, the Social Security Disability Determination Services referred Natwick to Dr. Patrick D. Mills for a psychological evaluation. (Tr. 310). It was Dr. Mills diagnostic impression that Natwick suffered from acute depression and pain disorder associated with both psychological factors and general medical condition. (Tr. 322). Dr. Mills made the following prognosis: good for recovery from back surgery based upon his physician's report; fair to good for recovery from chronic and acute depression secondary to pain; very good to excellent recovery for vocational/occupational adjustment with retraining. (Tr. 323).

Natwick underwent a mental residual functional capacity assessment in January 2001. (Tr. 327). The report of this assessment indicated that Natwick suffered from an effective disorder, i.e., a depressive syndrome characterized by sleep disturbance, psychomotor agitation, difficulty concentrating or thinking, and thoughts of suicide. (Tr. 332).

In May 2001, Dr. Arazi completed a second physical residual functional capacity assessment. (Tr. 375–82). In Dr. Arazi's opinion, Natwick could not lift in excess of 10 pounds, could stand or walk less than 2 hours in an 8–hour workday, had to periodically alternate between sitting and standing to relieve pain or discomfort, was limited in both the upper and lower extremities in his ability to push or pull, and suffered from some manipulative limitations. (Tr. 375–378).

At the administrative hearing, a vocational expert testified that a hypothetical person possessing Natwick's level of education and who is capable of sitting for 6 hours in an 8–hour day, standing and walking for 2 hours in an 8–hour day, and occasionally lifting 10 pounds would be incapable of performing Natwick's past relevant work. (Tr. 54). However, the vocational expert added that such a person could work as a telemarketer or charge account clerk and that thousands of such positions exist in the national economy. (Tr. 55).

## III. ALJ'S OPINION

The ALJ acknowledged that Natwick was unable to return to his past work. (Tr. 16). Nevertheless, the ALJ concluded that Natwick was not disabled within the meaning of the Social Security Act. (Tr. 17). In reaching his decision, the ALJ employed the five-step sequential analysis prescribed by the regulations. See 29 C.F.R. § § 404.1520 and 416.920.

The ALJ dispensed with the first two steps and acknowledged that Natwick had not engaged in substantial gainful activity since November 20, 1999, and that he suffered from severe impairments that mildly restricted his daily activities. (Tr. 17). As to step three, the ALJ determined that while Natwick's impairment was serious, it did not meet or equal one of the impairments listed in the regulations and, therefore, was not so severe as to require an immediate finding of disability. (Tr. 17). At the fourth step, the ALJ reviewed the objective medical evidence as well as Natwick's subjective pain complaints. (Tr. 21). Although the ALJ did not find Natwick entirely credible, he accepted that Natwick was not capable of performing his past relevant work. (Tr. 21). With respect to the fifth and final step, the ALJ reviewed the opinions of medical consultants and the vocational expert and concluded that Natwick retained the ability to perform a somewhat restricted range of sedentary exertion level. Therefore, the ALJ concluded that Natwick could work in the jobs identified by the vocational expert

that existed in significant numbers in the national economy. (Tr. 21–23).

## IV. STANDARD OF REVIEW

■ The Court plays a limited role when reviewing the Commissioner's decisions. *Wiseman v. Sullivan*, 905 F.2d 1153, 1155 (8th Cir.1990). The Court does not conduct a de novo review. *Keller v. Shalala*, 26 F.3d 856, 858 (8th Cir. 1994). Rather, the Court is required to review the record as a whole to determine whether the decision is supported by substantial evidence. Upon review of the pleadings and a transcript of the record, the Court can affirm, modify, or reverse the decision of the Commissioner, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g). To affirm the Commissioner's decision, the Court must find that it is supported by substantial evidence appearing in the record as a whole. *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir.1989). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir.1992). The review of the record is more than a search for evidence supporting the Commissioner's decision. The Court must also take into account matters that detract from the ALJ's findings and apply a balancing test to weigh evidence which is contradictory. *Kirby v. Sullivan*, 923 F.2d 1323, 1326 (8th Cir. 1991); *Sobania v. Secretary of Health & Human Services*, 879 F.2d 441, 444 (8th Cir.1989).

When conducting its review, the Court employs a "scrutinizing analysis" that balances the supporting and contradictory evidence on the record. *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir.1987). As noted, this requires more than a search for evidence that supports the Commissioner's decision. *Id.* The Court must review the entire record and weigh all evidence that

fairly detracts from the Commissioner's findings. *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir.1989).

■ When determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider:

1) the credibility findings made by the ALJ;

2) the plaintiff's vocational factors;

3) medical evidence from treating and consulting physicians;

4) the plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments;

5) any corroboration by third parties of the plaintiff's impairments; and

6) the testimony of vocational experts that is based upon a proper hypothetical questions setting forth the plaintiff's impairment.

*Baker v. Secretary of Health and Human Services*, 955 F.2d 552, 555 (8th Cir.1992).

The substantial evidence standard "allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir.1994). In other words, while the Court may weigh evidence differently, it cannot reverse a Commissioner's decision if there is sufficient evidence to support either outcome. *Id.*

■ Finally, it is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental impairment lasting at least twelve (12) months that prevents him from engaging in any substantial gainful activity. See *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); 42 U.S.C.

§ 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(C).

## V. LEGAL DISCUSSION

■ An ALJ is required to make an express credibility determination explaining why he did not fully credit a claimant's complaints. See *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir.2000). When assessing a claimant's credibility, the ALJ must consider all of the evidence, including prior work records and the observations of third parties and physicians which relate to such matters as the claimant's daily activities, the duration, frequency, and intensity of pain, precipitating and aggravating factors, the dosage, effectiveness, and side effects of medication, and functional restrictions. *Id.* See *Polaski v. Heckler*, 739 F.2d 1320, 1321 (8th Cir.1984). The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence. *Lowe v. Apfel*, 226 F.3d 969, 972. However, the ALJ may discount the claimant's complaints based upon inconsistencies in the record as a whole. See *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir.1993). When adequately explained and supported, credibility findings are for the ALJ to make. See *Lowe v. Apfel*, 226 F.3d 969, 972; *Tang v. Apfel*, 205 F.3d 1084, 1087 (8th Cir.2000).

Natwick contends that the ALJ's credibility determinations are not entitled to any deference in this instance. Natwick maintains that, contrary to the ALJ's findings, his complaints are consistent with the objective medical evidence as well as the opinions of those physicians familiar with his condition. Although Natwick recognizes that credibility determinations are generally within the province of the ALJ, he asserts that the ALJ failed to articulate a specific reason or rationale for discounting his subjective complaints.

There is little dispute that Natwick has experienced and continues to experience pain on account of his condition. However, the question before the Court is whether the ALJ considered all of the evidence when assessing Natwick's credibility and whether the ALJ's assessment is borne out by the record as a whole. The Court concludes that the decision of the ALJ is supported by the record.

■ There is substantial evidence to support the ALJ's conclusion that Natwick is not disabled on account of his mental condition. Although Natwick has suffered from symptoms of depression, there is nothing to indicate that he has obtained any treatment from mental health professionals; that he has been prescribed any medication for depression; or that he has been hospitalized on account of his mental condition. Further, as the ALJ noted, the consultive examiner opined that Natwick's prognosis from a mental health perspective is generally good. (Tr. 20, 323).

With respect to Natwick's physical condition and attendant symptoms, the record reveals that the ALJ considered the Polasky factors before rendering a judgment. (Tr. 20). The ALJ chronicled Natwick's initial medical treatment through his spinal surgery and highlighted Dr. Arazi's observation that Natwick was showing slow but steady improvement following surgery. (Tr. 19–20). The ALJ further noted that Natwick activities of daily living appeared somewhat limited but that his condition had improved to the extent that he was no longer required to wear a back brace. (Tr. 21).

In considering and weighing all of the evidence, it is possible to reach a conclusion different than the one reached by the ALJ in this case. However, while the Court may weigh evidence differently, it

cannot reverse the ALJ's decision if it is supported by substantial evidence. The Court may not necessarily agree with the ALJ's decision but it cannot reverse the ALJ's decision if there is sufficient evidence to support either outcome and such is the case in this dispute.

■ As noted above, a careful examination of the record reveals that the ALJ gave full consideration to Natwick's subjective pain complaints; the opinions of consulting physicians; the opinions and observations of those physicians treating Natwick; and the objective medical data before rendering a judgment in the Commissioner's favor. In the ALJ's opinion it was significant that Natwick's was capable of managing his pain and had demonstrated continued improvement. The ALJ concluded that Natwick was not disabled as defined by the Social Security Act. The Court finds that this conclusion is supported by substantial evidence in the record and, as a result, the Court cannot substitute its judgment for the judgment of the ALJ.

## VI. CONCLUSION

The ALJ's conclusion is supported by substantial evidence and is AFFIRMED. Accordingly, Natwick's Motion for Summary Judgment (Docket No. 14) is DENIED and the Commissioner's Motion for Summary Judgment (Docket No. 15) is GRANTED.

IT IS SO ORDERED.