**David SOBANIA, Appellant,**

v.

**SECRETARY OF HEALTH & HUMAN SERVICES, Appellee.**

No. 88–5323.

United States Court of Appeals, Eighth Circuit.

Submitted May 10, 1989.

Decided July 19, 1989.

Mark G. Olive, Minneapolis, Minn., for appellant.

Patricia R. Cangemi, Minneapolis, Minn., and Donna L. Calvert, Chicago, Ill., for appellee.

Before BEAM, Circuit Judge, MARKEY,* Chief Judge, and HENLEY, Senior Circuit Judge.

HENLEY, Senior Circuit Judge.

In this appeal, David Sobania challenges the district court's [1] order granting summary judgment in favor of the Secretary of Health and Human Services (Secretary) and affirming the Secretary's decision denying Sobania's applications for disability benefits and supplemental security income (SSI). For reversal, Sobania argues that (1) the Secretary's determination that he is not disabled within the meaning of the Social Security Act is not supported by substantial evidence in the record as a whole; and (2) the Secretary erred in relying upon vocational expert testimony to sustain the burden of proving that suitable employment exists in the national economy for a person with Sobania's limitations because the hypothetical presented to the vocational expert omitted certain pertinent facts. We affirm.

Sobania was born in 1963, has a high school education and was previously employed as a heavy equipment operator for a construction company. He filed the above-mentioned applications in July, 1985, alleging disability since October 29, 1983 as the result of injuries sustained in an automobile accident. Both applications were denied at the administrative level, as was Sobania's petition for reconsideration. Upon Sobania's request, a hearing was then held before an Administrative Law Judge (ALJ).

The evidence presented to the ALJ indicates that Sobania was injured in a two-car collision on October 29, 1983. Upon impact, the vehicle in which Sobania was a passenger burst into flames, causing him to suffer severe burns over approximately thirty per cent of his body. In addition, Sobania suffered a right temporal laceration and a ruptured spleen. He was in a hospital for nearly two months under the care of Dr. Lynn Solem and Dr. David Ahrenholz. While in the hospital, Sobania underwent several skin grafts whereby skin from his back and thighs was transplanted to his arms, legs, abdomen, face, neck and wrist. He was discharged December 22, 1983. Upon discharge, he was instructed to wear a body suit over his entire body in order to prevent hypertrophy [2] of the grafted areas.

Generally speaking, the medical reports after Sobania's discharge indicate that his burns were healing well and that he had a fairly good range of motion except in his right thumb and wrist. The medical reports throughout the early spring of 1984 reflect active hypertrophic scarring over his legs, abdomen, arms, neck and face. In April, 1984, however, Dr. Solem noted a marked decrease in hypertrophic scarring on Sobania's face and neck. Of critical importance to the ALJ's decision in this case is a letter prepared by Dr. Solem dated October 23, 1984. In this letter, Dr. Solem suggested that Sobania "be considered disabled from the time of injury until today's date at which time he will be released to work with restrictions of having to avoid the extremes of temperature, petroleum and toxic chemicals, and the use of precautions, *i.e.*, sunscreen when exposed to the sun." Similarly, the subsequent medical evidence of record reflects that Sobania's progress was good, that he had participated in physical therapy, but that some future surgery might be required, particularly with respect to his scarring.

Sobania also underwent three psychological examinations in the spring and early fall of 1984. The reports of these examinations generally indicate that he suffered

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Appeals for the Federal Circuit, sitting by designation.

1. The Honorable Harry A. MacLaughlin, United States District Judge, District of Minnesota.

2. Hypertrophy is an increase in the size of an organ due to the enlargement of its constituent cells. Gould Medical Dictionary 645–46 (4th ed. 1979).

some memory loss. In addition, one of these examinations, an extensive neuropsychological examination conducted April 13, 1984 by Dr. Manfred J. Meier, a psychologist, reflected that Sobania was functioning at the upper end of the borderline mentally retarded range. Dr. Meier also noted a mild impairment of attention and concentration but added that Sobania's planning and foresight abilities were at the high average level. Relatedly, after performing mental status testing and a neurological examination, Dr. Jan Weber, who examined Sobania on September 12, 1985, concluded that he had the ability to understand and follow instructions such as those necessary for unskilled or semi-skilled work. Similarly, Dr. Weber opined that Sobania's attention span permitted the performance of simple, repetitive tasks but that he would confront difficulty withstanding the stress of jobs with speed or accuracy requirements because of his scarred hands and memory deficits. In addition, Dr. Weber suggested that Sobania was under stress both because of the pain he experienced and his disfigurement, which would likely interfere with his ability to work with the public.

Sobania testified that due to the weakness in his hands and wrists, he has difficulty lifting more than a "little weight." He added, however, that he is able to dress and wash himself. He testified that because of the limited motion in his arms and hands as a result of the burns, he has difficulty turning his hands and fully extending his arms. He further stated that his upper and lower neck are sore and stiff because of the skin grafts taken from these areas; he can sit for approximately one-half hour before low back pain necessitates a change in position. Relatedly, Sobania testified that he can only stand for three to five minutes before his left leg tingles and hurts. His leg injuries also limit the distance he can walk, which he estimated at approximately eighty yards. Sobania further estimated that he spends approximately three hours a day lying down because of the pain in his legs and back.

Sobania reported that he feels limited in going out in public because of his facial disfigurement. In addition, he stated that he is required to wear a plastic mask and body suit, to apply ointment to his burns on a daily basis, to take numerous baths to cool his body temperature, to wear a mouthpiece and nose device at night, and to avoid extremes in temperature. He testified that he is confined to his home for most, if not all, of the day. Finally, he testified that he would like to return to work but feels unable to do so because of his memory impairment.

After considering this evidence, the ALJ found that Sobania was severely impaired as the result of post-burn scars, but concluded that he did not have an impairment or combination of impairments equal to those contained in the Secretary's listings. In addition, the ALJ determined that Sobania was unable to return to his past work because it was too strenuous for his capabilities. The ALJ stated that although he believed Sobania has a capacity for lifting more than five pounds, he would impose a five pound restriction on Sobania's residual functional capacity due to the pain he experienced in lifting heavier objects. The ALJ adopted Dr. Solem's recommendation that Sobania avoid extremes in temperature, petroleum products and other toxic chemicals, and the sun. The ALJ added that Sobania was "limited to simple, repetitive tasks which can be performed with only simple instructions and which do not involve significant speed with respect to manual dexterity," and that Sobania "cannot work at jobs involving significant interaction with the general public."

In arriving at these restrictions, the ALJ discounted Sobania's subjective complaints of disabling pain which, the ALJ noted, if true, would prevent all forms of work. Specifically, the ALJ rejected Sobania's testimony concerning the amount of time devoted to the cosmetic and medicinal care of his scars, noting that the record was devoid of any prescribed therapeutic measures consuming the time alleged by Sobania. Relatedly, the ALJ rejected Sobania's testimony that he is required to lie down for three hours a day, noting that there is

nothing in the record indicating that Sobania informed his treating physician of such a necessity or that it was medically recommended. Finally, noting that the record contains no indication that Sobania sought mental health counselling and that, despite the indication of some loss of mental faculties (specifically memory loss), his present mental faculties at the minimum are consistent and compatible with the performance of unskilled work, the ALJ rejected Sobania's allegations of psychological and mental disability.

In relation to the Secretary's burden of proving that work exists in the national economy suitable for Sobania, the ALJ consulted a vocational expert who was presented with the restrictions delineated by the ALJ. The vocational expert testified that there exist three to five hundred sorting, inspection and assembly occupations in the sedentary work level suitable for Sobania in the Twin Cities area alone; the expert opined that a comparable number exists in the national economy. Relying upon this testimony, the ALJ concluded that Sobania's medically determinable impairments had not prevented him from performing substantial gainful activity for any consecutive period of twelve months, and thus that he was not disabled within the meaning of the Social Security Act.

As indicated, Sobania's request for review by the Appeals Council was denied. He then commenced this action for judicial review in federal district court. The magistrate [3] to whom the matter was referred determined that the ALJ properly incorporated all of Sobania's limitations and credible complaints of pain into the hypothetical presented to the vocational expert, and concluded upon the basis of the expert's opinion and a review of the record that the ALJ's decision to deny Sobania's request for benefits was supported by substantial evidence. The magistrate's recommendation was adopted by the district court, and this appeal followed.

Sobania first argues that the district court erred in affirming the Secretary's decision because it is not premised upon substantial evidence in the record as a whole. Specifically, Sobania maintains that the record establishes that he suffers from a combination of severe physical and mental impairments which limit his ability to work.

Judicial review of disability determinations is limited to an assessment of whether the Secretary's decision is premised upon substantial evidence in the entire record. 42 U.S.C. § 405(g); *Bogard v. Heckler*, 763 F.2d 361, 362–63 (8th Cir. 1985). This review implicates more than a mere search for evidence supporting the Secretary's decision; a reviewing court must also take into account evidence which detracts from the Secretary's determination, *Piercy v. Bowen*, 835 F.2d 190, 191 (8th Cir.1987), and apply a balancing test to weigh evidence which is contradictory. *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir.1987). Our review of the record in the present case persuades us that substantial evidence supports the Secretary's decision that Sobania could perform the type of work described by the vocational expert, and thus that the Secretary satisfied the burden of proof.

Although Sobania argues that the ALJ overlooked pertinent information in the record, we disagree. The ALJ carefully set forth all of the evidence and took Sobania's specific limitations into account before concluding that he did not meet a listed impairment. We find no error in this regard. The listing which Sobania's burns most closely approximate is contained in 20 C.F.R. § 404, Subpart P, App. 1, § 1.13, which refers to the loss of functioning in an extremity. No such loss existed in the case at hand. Relatedly, although Sobania urges that he suffered a mental impairment, our review of the applicable listing, 20 C.F.R. § 404, Subpart P, App. 1, § 12.04, persuades us otherwise. Contrary to the requirements of this listing, although the record demonstrates that Sobania suffered from some memory loss and stress, none of the medical personnel examining his mental capabilities suggested that

---

**3.** The Honorable Janice M. Symchych, United     States Magistrate, District of Minnesota.

he suffered disorders of the nature or degree delineated in the listing.

■ In reality, Sobania's attack is levied upon the ALJ's determination that his complaints of pain, his testimony concerning the amount of time devoted to his health care, and his mental and psychological well-being are not credible. We note, however, that the ALJ made specific findings with respect to each of these allegations, setting forth the evidence in the record inconsistent with Sobania's testimony and the reasons for his determination that Sobania's complaints are not credible. Our examination of the record persuades us that the ALJ's findings in this regard are premised upon substantial evidence. *See Andres v. Bowen*, 870 F.2d 453, 455 (8th Cir.1989).

Likewise, the record reflects that the ALJ undertook the requisite analysis in evaluating Sobania's subjective complaints. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984) (subsequent history omitted). Although Sobania argues that the ALJ placed inordinate reliance upon the lack of objective medical evidence in discrediting his complaints, *see Beeler v. Bowen*, 833 F.2d 124, 127 (8th Cir.1987), the record reflects that the ALJ also considered the fact that Sobania's complaints were uncorroborated by additional evidence in the record and that the uncontradicted recommendation of his treating physician undermined his allegations of disabling pain. This is not to say that Sobania's complaints are completely unsupported by the record; to the contrary, the record demonstrates that he does suffer pain and must take certain precautions to prevent or lessen it. We believe, however, that the ALJ recognized this fact and included the necessary restrictions both in evaluating Sobania's complaints and in structuring a hypothetical for the vocational expert's consideration. In summary, we conclude that substantial evidence in the record supports the ALJ's determination that Sobania does not suffer from an impairment or combination of impairments rendering him disabled.

■ This brings us to Sobania's second assignment of error, that the ALJ erroneously relied upon the testimony of the vocational expert because the hypothetical presented to the expert omitted certain pertinent facts. Once the ALJ determined that Sobania was incapable of returning to his past work, the burden of proof shifted to the Secretary to establish that work existed in the national economy suitable for an individual with Sobania's restrictions. *Talbott v. Bowen*, 821 F.2d 511, 514 (8th Cir.1987). Here, the ALJ properly recognized the shift in the burden and elected to call for vocational expert testimony. We have held that in utilizing the testimony of a vocational expert for this purpose, the ALJ "must set forth all of the claimant's disabilities when posing a hypothetical question to [the] ... expert." *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir.1985). We have also recognized, however, that the ALJ need not include every physiological impairment suggested by the evidence. "Rather, the hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ." *Id.* Having concluded that the ALJ committed no error in rejecting certain of Sobania's alleged impairments and in discrediting certain of his complaints, we hold that the hypothetical presented to the expert fully complied with the requirements of our decision in *Roberts*. Hence, we find no error in the ALJ's reliance upon the expert's testimony in satisfying the Secretary's burden of proof.

In summary, we conclude that the Secretary's determination in the case at hand is supported by substantial evidence in the record, and thus that the district court committed no error in granting the Secretary's motion for summary judgment.