**Jerry L. HIGHT, Appellant,**

v.

**Donna SHALALA,\* Secretary of Health and Human Services, Appellee.**

No. 92–2611.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1993.

Decided March 3, 1993.

Richard J. Collins, Joplin, MO, argued, for appellant.

Alleen S. Castellani, Kansas City, MO, argued (Jean Paul Bradshaw II and Alleen S. Castellani, on the brief), for appellee.

Before MORRIS SHEPPARD ARNOLD, Circuit Judge, and FLOYD R. GIBSON and REAVLEY,\*\* Senior Circuit Judges.

FLOYD R. GIBSON, Senior Circuit Judge.

Jerry Hight appeals the district court's affirmance of the Secretary's denial of his claim for disability benefits. We reverse and remand for computation of benefits.

## I. BACKGROUND

At the time of his administrative hearing, Hight was thirty-five years old, was five feet, nine inches tall, and weighed 122 pounds. He had served in the United States Navy from 1973 until 1976, and served a second tour in the Navy from 1984 until 1988. During this latter tour of duty,

---

\* Donna Shalala has been substituted for Louis Sullivan pursuant to Fed.R.App.P. 43(c)(1).

\*\* The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

Hight specialized in asbestos removal, particularly from submarines. While in the Navy, Hight suffered a series of back injuries, and the Veterans Administration gave him a 10% permanent partial disability rating due to his back injuries.

In June of 1988, Hight began working for a body shop in Joplin, Missouri. His supervisor described him as an "exceptional worker." However, in the middle of 1989, Hight began to experience chronic shortness of breath that necessitated frequent breaks and caused attendance problems. He also started losing weight rather rapidly—he dropped from 162 pounds to 117 pounds in approximately three months. In April 1989, Hight went to the VA Hospital in Fayetteville, Arkansas because of his weight loss and fatigue. Though he was admitted for testing, the hospital records reflect no diagnosis for Hight's problems; he was prescribed a painkiller to help with his back pain and discharged.

In June, Hight went to the Missouri Rehabilitation Center in Mt. Vernon, where he underwent a pulmonary function test. The test indicated that Hight suffered from a mild airway obstruction, which suggested the presence of a small airway disease. In August, Hight underwent another pulmonary function test at the VA Hospital, which indicated that Hight had a "moderate obstructive ventilatory defect of the peripheral airways." A test performed at the VA Hospital the following month indicated Hight had a "moderate obstructive ventilatory defect of the large airways, with severe obstruction of the peripheral airways." The report also indicated that his condition was "[c]onsiderably worse" than indicated the previous month, but that there had been "[p]ositive response to [a] bronchodilator." X-rays were taken in October, but they were negative. In October of 1989, Hight was forced to quit his job at the body shop because of his inability to work.

In April 1990, Hight became depressed and was admitted to the VA Hospital. A physical examination revealed chronic obstructive pulmonary disease. Later that month, Dr. Tarar, a psychiatrist, diagnosed Hight as suffering from a variety of stress-related disorders and indicated that Hight could not hold employment, but might be a candidate for vocational rehabilitation in the future. In May, Hight was examined by Dr. Adams at St. John's Regional Medical Center. Dr. Adams conducted yet another pulmonary function test and concluded that Hight suffered from an "advanced obstructive ventilatory defect" that showed "minimal but significant improvement following bronchodilator administration." Dr. Adams further opined that Hight suffered from a physical condition that prevented him from performing gainful employment.

At the administrative hearing, Hight testified that he had trouble sleeping at night and often had to sleep sitting in a chair. He experienced difficulty in performing any task without taking frequent rest breaks. He said he could stand for an hour, sit for thirty minutes, and walk no more than one block. He also said the medication he was prescribed for his depression made him drowsy, and that he therefore did not drive a car very often. He occasionally helped his wife around the house, but even doing the dishes was a taxing endeavor. His daily activities consisted primarily of watching television and tending to an aquarium; on occasion, he would drive to the post office and pick up his mail. Hight's wife also testified, and she essentially confirmed Hight's statements.

The only other witness was a vocational expert ("VE"), who was asked by the ALJ to assume that Hight had a back injury and a "breathing impairment," could not work at more than a sedentary work level, and had to work in a clean environment. The VE testified there were several unskilled jobs existing in significant numbers in the national economy that Hight could perform. In response to a hypothetical crediting Hight's testimony, the VE testified there would be no jobs he could perform.

The ALJ's written findings reflect that the ALJ disbelieved the severity of Hight's complaints because his x-rays were normal, he demonstrated positive response to a bronchodilator, and because his subjective

assessment about his abilities and limitations conflicted with his daily activities. On this basis, the ALJ concluded Hight was not disabled.

## II. DISCUSSION

When reviewing disability determinations, we examine the administrative record to determine whether the Secretary's decision is supported by substantial evidence found in the entire record. *Sobania v. Secretary of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir.1989). "This review implicates more than a mere search for evidence supporting the Secretary's decision; a reviewing court must also take into account evidence which detracts from the Secretary's determination and apply a balancing test to weigh evidence which is contradictory." *Id.* (citations omitted).

In this case, the ALJ rejected Hight's claim primarily because he found Hight's testimony to be unworthy of belief; however, the ALJ's stated reasons for reaching this conclusion are legally unacceptable. First, the fact that Hight's x-rays are normal does not mean that he does not experience the difficulties that he testified about at the hearing because there was no evidence that normal x-rays were inconsistent with the breathing problems Hight reported. Moreover, there is no denying that Hight suffers from *some* ailment affecting his lungs, his breathing, and his overall health. Second, the fact that Hight is not bedridden does not mean he is not disabled; the minimal activities Hight engages in do not contradict his testimony regarding his abilities. *Cf. Ricketts v. Secretary of Health & Human Servs.*, 902 F.2d 661, 663 (8th Cir.1990); *Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir.1989). Finally, the record reflects that Hight does respond favorably to treatment from a bronchodilator,

but it also reflects that the positive effects have been diminishing over time. In fact, in the latest report on this subject, Dr. Adams reported the bronchodilator caused "minimal but significant improvement"— and, in spite of this, Dr. Adams still opined that Hight was unable to work.[1]

In short, the ALJ lacked any basis for discounting Hight's subjective complaints. When all the evidence in the record is considered, there is ample evidence to suggest Hight is disabled, and the Secretary failed to present any evidence to suggest that he is not. Consequently, a finding of disability is mandated, and we remand to the district court so that it can remand to the Secretary for a computation and award of benefits.

---

1. The Secretary's contention that Dr. Adams' opinion cannot be the basis for a finding of disability because he is a consulting physician is unfounded. We have never held that the opinions of consulting physicians cannot constitute substantial evidence; indeed, such a holding would make the provisions allowing the Secretary to require claimants to submit to consultative exams, 20 .C.F.R. §§ 404.1517–.1518, mean-

ingless. Although we have stated that "a treating physician's opinion is normally accorded a higher degree of deference than that of a consulting physician...." *Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir.1991), that does not mean a consulting physician's opinion can never constitute substantial evidence upon which a disability determination may rest.