998 F.2d 1018
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that they are not precedent and generally should not be cited unless relevant to establishing the doctrines of res judicata, collateral estoppel, the law of the case, or if the opinion has persuasive value on a material issue and no published opinion would serve as well.
Patricia M. KINEALY, Plaintiff-Appellant,
v.
Donna E. SHALALA, Defendant-Appellee.
 No. 91-1401.
 United States Court of Appeals,
 Eighth Circuit.
Submitted: September 4, 1992.
Filed: July 13, 1993.
 
 Before JOHN R. GIBSON, BOWMAN, and LOKEN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Patricia Kinealy appeals from a district court[1] judgment affirming the Secretary of Health and Human Services'[2] denial of disability insurance benefits. Kinealy argues that her disability is based on both objective and subjective evidence, that her past ability to work with a disability is not evidence of a present ability to work, and that before the Administrative Law Judge can determine that she is able to perform her past work, she must be able to perform it realistically. She also argues that the ALJ became an advocate against her, disregarded evidence, and substituted his medical opinions for her doctors'. We affirm the judgment of the district court.
 
 
 2
 On March 22, 1988, Kinealy filed a claim for disability and supplemental income benefits under Titles II and XVI of the Social Security Act. She maintains that she suffers from a variety of impairments, including a severed left heel which was repaired using skin grafts from both thighs. The Secretary rejected her claim, and Kinealy appealed.
 
 
 3
 In September 1988, Kinealy testified at a hearing before an ALJ. In addition to her heel complaints, Kinealy testified that she had constant pain on her right side which resulted from a hysterectomy she received as treatment for endometriosis. She stated that she hurt her shoulder in 1986, and experiences terrible pain in her shoulder and neck and suffers from daily headaches. She testified that she cannot get out of bed on some days, cannot stand without holding onto something, cannot pick up items from the floor, and cannot walk very far without intolerable pain (even using crutches). When asked if she suffered from depression, Kinealy testified that she sometimes feels worthless. Kinealy also testified that she was taking numerous medications. Kinealy's mother and daughter both testified with respect to her disability, complaints of pain, and to the assistance they gave her in doing housework.
 
 
 4
 As part of the disability claim process, Kinealy completed a disability evaluation, and stated that her children did most of the housework, she played cards and barbecued with family members and friends, and she drove when necessary. She also provided information about her past work experiences. From 1983 to 1984, she worked as a waitress and a nurse's aide. From November 1980 to July 1983, she worked as a sales clerk and service counter attendant, and from 1976 to 1977, she worked as an alarm and radio operator and dispatcher.
 
 
 5
 Kinealy also provided the ALJ with a number of medical records, including records from St. Louis Labor Health Institute, Missouri Baptist Hospital, and Christian Hospital. The records indicate that in 1984 Kinealy had a callus on her right heel trimmed, and complained of nausea, abdominal pain, headaches, and stress and anxiety due to marital problems. She also reported difficulty in walking, and extreme fatigue at the end of her work day as a waitress. X-rays of her left foot revealed a well healed fracture of her heel bone with moderate deformity and no evidence of post-traumatic arthritis. Her 1985 records indicate she received treatment for calluses on both heels, and her 1988 records show that she visited an osteopath for right shoulder pain due to an injury from a 1986 automobile accident.
 
 
 6
 The Secretary had Dr. Edwards, a cardiovascular and internal medicine specialist, examine Kinealy. Dr. Edwards reported that although Kinealy had an old heel fracture (deformity of the calcaneus) and walked with a limp, she got on and off the examining table "quite well." Dr. Edwards concluded that pain would preclude Kinealy from performing a job that required walking or standing.
 
 
 7
 The ALJ reviewed all the evidence and found that Kinealy's earlier injuries interfered with prolonged standing or walking, but her impairments did not meet or equal the requirements of the listings. The ALJ then evaluated Kinealy's residual functional capacity and found that she could, at least, perform sedentary work. Evaluating Kinealy's past work, the ALJ concluded that because Kinealy's earlier job as a dispatcher was sedentary, the ALJ could not find that she was disabled.
 
 
 8
 In analyzing Kinealy's complaints, the ALJ found multiple inconsistencies in the record. He determined that the old lawn mower injury to her heel had completely healed, and that no medical evidence supported her claim of incapacitating headaches. He found nothing in the record to show that Kinealy sought medical treatment for her 1986 shoulder injury until 1988, and the 1988 x-rays revealed no fracture or degenerative changes. The ALJ contrasted Kinealy's statements that she could not use crutches or a wheelchair and could not stand, walk, or sit with her use of crutches at the hearing and her daughter's testimony that Kinealy had used a wheelchair to go Christmas shopping. The ALJ concluded that Kinealy was exaggerating her complaints in an effort to secure benefits. The ALJ also pointed to Kinealy's ability to visit with friends and relatives, play cards, barbecue, and drive. He found that these activities would be impossible if she had incapacitating and intractable pain. Accordingly, he concluded that if Kinealy had pain, it was not so intense that she could not return to her past relevant work as a dispatcher because that job did not require prolonged standing and walking.
 
 
 9
 Kinealy then sought review by the Appeals Council. The Appeals Council denied review, and observed that the ALJ's failure to actually cite Polaski v. Heckler, 739 F.2d 1320, 1321-22 (8th Cir. 1984), supplemented, 751 F.2d 943 (8th Cir. 1984), vacated, 476 U.S. 1167 (1986), adhered to on remand, 804 F.2d 456 (8th Cir. 1986), cert. denied, 482 U.S. 927 (1987), did not mean he had not complied with its mandate. The Council determined that the ALJ had appropriately evaluated Kinealy's pain, and that the substantial evidence supported the ALJ's finding that Kinealy retained the residual functional capacity to perform sedentary work. Finally, the Council reviewed some additional evidence Kinealy supplied and determined that it did not warrant a change in the decision.
 
 
 10
 Kinealy filed this suit in the district court. The district court referred the matter to a magistrate judge[3] who issued a detailed report, recommending that the Secretary's decision be affirmed. The district court adopted the magistrate judge's recommendation and affirmed the denial of benefits. Kinealy appealed.
 
 
 11
 On appeal, we must determine whether substantial evidence on the record as a whole supports the Secretary's decision. Sobania v. Secretary of Health & Human Servs., 879 F.2d 441, 444 (8th Cir. 1989). "Substantial evidence" means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). "This review implicates more than a mere search for evidence supporting the Secretary's decision; a reviewing court must also take into account evidence which detracts from the Secretary's determination, ... and apply a balancing test to weigh evidence which is contradictory." Sobania, 879 F.2d at 444 (citations omitted).
 
 
 12
 After carefully reviewing the record, we conclude that the substantial evidence supports the ALJ's finding that Kinealy could return to her past work.
 
 
 13
 Kinealy argues that the ALJ ignored the requirements of Polaski, 739 F.2d at 1321-22. In Polaski, we set out a number of factors that must be considered in evaluating subjective complaints. These factors include objective medical evidence; the claimant's daily activities; the duration, frequency, and intensity of pain; precipitating and aggravating factors; medication, including dosage and effectiveness; and functional restrictions. Id. The ALJ's opinion demonstrates that although he failed to specifically cite Polaski, he considered the appropriate factors. In addition, we have held that the ALJ may discount subjective complaints if there are inconsistencies in the evidence as a whole, and that the ALJ must make the credibility assessments in the first instance. Tucker v. Heckler, 776 F.2d 793, 796 (8th Cir. 1985). A careful review of the record supports the ALJ's conclusion that there were inconsistencies in the evidence. Accordingly, we conclude that the substantial evidence supports the ALJ's analysis, credibility determinations, and conclusion that Kinealy had the residual functional capacity to perform sedentary work.
 
 
 14
 Kinealy argues that she cannot realistically perform her past job as a dispatcher.
 
 
 15
 In determining whether a claimant can perform her past relevant work, an ALJ must evaluate the claimant's ability in light of her residual functional capacity. Martin v. Sullivan, 901 F.2d 650, 652 (8th Cir. 1990). Thus, the ALJ's finding that Kinealy's complaints of pain were not credible is key to his determination that Kinealy could perform her past relevant work. Because we have found that the substantial evidence supports the ALJ's determination regarding Kinealy's residual functional capacity, we need only determine whether the ALJ properly found that the dispatcher position falls within the realm of sedentary positions Kinealy could perform.
 
 
 16
 During a June 24, 1988 telephone call between Kinealy and a social worker, Kinealy described her past work as a dispatcher. Her own description shows that she had worked at a security company for approximately two years, and her job entailed sitting at a desk or radio except when she needed to turn off alarms. Turning off an alarm required her to walk approximately four feet or twelve to sixteen feet depending on the type of alarm. The number of times she had to get up and walk over to turn off an alarm varied each day, but there were many days when she had to get up quite a few times. She stated that the job did not require any lifting or carrying.
 
 
 17
 Kinealy, however, directs us to a form she completed on April 1, 1988, outlining information on her earlier job duties. There, Kinealy indicated that her duties required her to walk or stand some five hours per day. Inconsistencies in the evidence present factual issues to be determined by the ALJ. The information
 
 
 18
 Kinealy gave during the telephone contact was substantial evidence upon which the ALJ could base a finding that she primarily sat at a desk or radio and got up only occasionally to turn off alarms. That information also supported the ALJ's conclusion that because Kinealy had the residual functional capacity to perform sedentary work, she could perform her past relevant work as a dispatcher. Accordingly, the ALJ properly entered a finding of "not disabled." 20 C.F.R. § 404.1520(e) (1992); see also Warford v. Bowen, 875 F.2d 671, 674 (8th Cir. 1989).
 
 
 19
 Finally, Kinealy asks us to review evidence she submitted following the ALJ's hearing and decision. Although the Appeals Council reviewed the new evidence, it ultimately denied Kinealy's request for review. Accordingly, we cannot review the new evidence. We have jurisdiction to review only the ALJ's decision as it represents the Secretary's final decision in this case. 42 U.S.C. § 405(g) (1988); Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992).
 
 
 20
 In conclusion, we observe that the essence of Kinealy's argument is simply that her testimony is uncontradicted and supported by numerous witnesses. Nevertheless, it is the ALJ who evaluates the evidence, makes credibility determinations, and draws conclusions when inconsistencies are present in the record. Because the ALJ's findings in this case were based upon substantial evidence on the whole record, we affirm.
 
 
 
 [1]
 The Honorable Edward L. Filippine, Chief Judge United States District Court for the Eastern District of Missouri
 
 
 [2]
 Donna E. Shalala replaced Louis W. Sullivan, M.D., as the Secretary of Health and Human Services on January 22, 1993
 
 
 [3]
 The Honorable Catherine D. Perry, United States Magistrate Judge for the Eastern District of Missouri