**Linn J. HEINRICK, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

No. A4–03–46.

United States District Court, D. North Dakota, Northwestern Division.

Jan. 5, 2004.

Paul A. Temanson, Minot, ND, for plaintiff.

Jennifer Klemetsrud Puhl, U.S. Attorney's Office, Fargo, ND, for defendant.

## MEMORANDUM AND ORDER

HOVLAND, Chief Judge.

The plaintiff, Linn J. Heinrick, seeks judicial review of the Social Security Commissioner's denial of her applications for disability insurance benefits and supplemental security income. For the reasons set forth below, the Court grants the Defendant's Motion for Summary Judgment and denies the Plaintiff's Motion for Summary Judgment.

## I. PROCEDURAL HISTORY

The plaintiff, Linn J. Heinrick (Heinrick), protectively filed applications for disability insurance benefits (DIB) and Supplemental Security Income (SSI) on October 23, 2003, alleging that she had been disabled since February 23, 2000.

(Tr. 94–100). Heinrick's applications were denied initially and upon reconsideration, prompting her to request a de novo hearing before an administrative law judge (ALJ). (Tr. 11–15, 66–72). An administrative hearing was conducted on November 7, 2001. (Tr. 35–62). The ALJ issued his decision on February 20, 2002, wherein he concluded that Heinrick was not disabled as defined in the Social Security Act. (Tr. 16–29). The Appeals Council denied Heinrick's subsequent request for review on February 21, 2003, and adopted the ALJ's findings as the Commissioner's final decision. (Tr. 7–9). Heinrick then filed a complaint with this Court on April 18, 2003, seeking judicial review of the Commissioner's decision.

## II. BACKGROUND OF THE CASE

Linn Heinrick was born on May 12, 1949. (Tr. 40). She was 52 years old at the time of the administrative hearing. (Tr. 40). She graduated from high school and completed two years of post-secondary schooling at the North Pacific Medical and Dental College. (Tr. 40). Heinrick has worked as a dental assistant, optician, accounts payable clerk, store manager, and most recently as a customer service representative for a telemarketer. (Tr. 109, 123, 143). She has not engaged in substantial gainful activity since February 2000. (Tr. 42).

Heinrick has sought treatment for right piriformis syndrome, bursitis, fascitis, a depressive disorder, fibromyalgia, and carpel tunnel syndrome. (Tr. 45, 368, 297–298, 323–324, 377). She has also complained of chronic lower back pain—which she attributes to spinal fractures she sustained in a 1975 car accident—as well as headaches, fatigue, difficulty concentrating, short-term memory loss, feelings of anxiousness, and pain in her hip, knee, and heal. (Tr. 43–44, 46, 172). Heinrick un-

derwent an MRI in 1997, the results of which revealed that she suffered from a degenerative disc disease as well as disc protrusions. (Tr. 180). X-rays taken in 1998 of Heinrick's spine revealed cervical disc degeneration as well as mild disc space narrowing at L4–L5 and L5–S1. (Tr. 183, 195–196).

On a scale of 1 to 10, Heinrick rated her pain somewhere between 7½ and 8. (Tr. 44). To combat her pain and depression, Heinrick has relied on exercise and the prescription drugs Neurotin, Propoxy, Cyclobenazphine, and Zoloft. (Tr. 131, 147, 163). She also gets massages as her finances permit and wears orthodics as well as back and wrist braces as needed. (Tr. 45, 132). She estimated that her prescription drugs are been between sixty and ninety percent effective. (Tr. 131). However, she has complained that the Neurotin often leaves her feeling "fuzzy." (Tr. 44).

Despite her pain, Heinrick reportedly tries to walk between 6 and 8 miles per week. (Tr. 132). She is able to assist her husband in managing the couple's finances and remains capable of driving a car. (Tr. 40). Nevertheless, her condition has reportedly restricted her ability to travel, limited her ability to do yard work, prevented her from performing household activities such as mopping, and kept her from hunting. (Tr. 41, 49). In addition, her condition has reportedly precluded her from sitting for more than 2 hours out of an 8–hour day. (Tr. 42, 45).

When answering personal pain questionnaires and later testifying before the ALJ, Heinrick described her typical day as follows. (Tr. 47–48, 132). She begins her day with some stretching exercises. (Tr. 47–48, 132). Next, she changes clothes, makes her bed, prepares breakfast, and does some light work around the house. (Tr. 47–8, 132). In the afternoon she takes her medication, rests on the couch, and ices her hip. (Tr. 47–8, 132). In the evening, she may cook dinner and wash dishes with her husband's assistance. Heinrick will then usually perform some additional exercises before taking a hot bath and going to bed. (Tr. 132).

Heinrick's husband testified before the ALJ and said that Heinrick had experienced difficulty walking and lifting. (Tr. 55). He also testified that Heinrick had "slowed down" in recent years, that she had been in a lot of pain, and that she had exhibited difficulty with her concentration and her ability to remember instructions or details. (Tr. 55–56).

A vocational expert testified that a hypothetical 50–52 year old person possessing Heinrick's education and work experience who had postural limitations and was limited to lifting 20 occasionally and 10 pounds frequently could perform her past relevant work. (Tr. 58). The vocational expert testified that this hypothetical person's ability to perform her past relevant would be impacted if she had to alternate sitting and standing on an hourly basis. (Tr. 59). Specifically, the vocational expert ruled out work as a dental assistant, customer representative, and store manager, but opined that it would still be possible for this hypothetical person to perform the work of a telemarketer and accounts payable clerk. (Tr. 59). When asked by the ALJ if, in addition to all of the aforementioned limitations, this hypothetical person could hold a job as a telemarketer or accounts payable clerk if she was unable to work 7½ to 8 hours for five consecutive days without normal breaks, the vocational expert replied in the negative. (Tr. 59).

## III. ALJ'S DECISION

The ALJ used the five-step sequential evaluation mandated by 20 C.F.R. § 404.1520 when determining whether Hendricks was disabled:

(1) whether the claimant is presently engaged in a substantial gainful activity,

(2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities,

(3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations,

(4) whether the claimant has the residual functional capacity to perform his or her past relevant work, and

(5) if the claimant cannot perform the past work, the burden then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

(Tr. 17–19).

The ALJ dispensed with the first three steps and found that (1) Heinrick had not engaged in substantial gainful activity since February 23, 2000; (2) Heinrick's medically determinable impairments were severe; and (3) Heinrick's impairment(s) did not meet any of the criteria of any of the listed impairments. (Tr. 17, 28–29).

Moving on to the fourth step, the ALJ acknowledged that Heinrick's condition prevented her from enjoying the active lifestyle to which she had previously been accustomed. (Tr. 20). However, upon reviewing Heinrick's subjective pain complaints in conjunction with the objective medical evidence, the ALJ concluded that Heinrick was not precluded from performing light work on account of her condition. (Tr. 21).

When sifting through the objective medical data, the ALJ observed that Heinrick had reported good to excellent benefit from her medications, that she had responded favorably to treatment, that her depression was under excellent control, and that she remained capable of walking significant distances at one time. (Tr. 23–25). The ALJ discounted the opinions of Heinrick's treating physicians on grounds that they were not well supported and not consistent with the other substantial evidence. (Tr. 26–27). The ALJ also discounted Heinrick's subjective pain complaints on the grounds that her testimony was not fully credible. (Tr. 27).

Based upon the evidence, and giving Heinrick the benefit of the doubt, the ALJ found that Heinrick retained the residual functional capacity to perform work-related activities with lifting, and/or carrying up to 20 pounds occasionally and up to 10 pounds frequently so long as allowances were made for alternating between sitting and standing on an hourly basis. (Tr. 28). Relying on the testimony of the vocational expert, the ALJ further concluded that Heinrick's impairments would not prevent her from performing her past relevant work as a telemarketer or an accounts payable clerk. (Tr. 28).

## IV. STANDARD OF REVIEW

This Court plays a limited role when reviewing the Commissioner's decisions. *Wiseman v. Sullivan*, 905 F.2d 1153, 1155 (8th Cir.1990). The Court does not conduct a de novo review. *Keller v. Shalala*, 26 F.3d 856, 858 (8th Cir.1994). Rather, it looks at the record as a whole to determine whether the decision is supported by substantial evidence. Upon review of the pleadings and transcript of the record, the Court can affirm, modify, or reverse the decision of the Commissioner, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). To affirm the Commissioner's decision, the Court must find that it is supported by substantial evidence appearing in the record as a whole. *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir.1989). "Substantial evidence is less than a preponderance, but enough

so that a reasonable mind might find it adequate to support the conclusion." *Robinson v. Sullivan,* 956 F.2d 836, 838 (8th Cir.1992). The review of the record is more than a search for evidence supporting the Commissioner's decision. The Court must also take into account matters that detract from the ALJ's findings and apply a balancing test to weigh evidence which is contradictory. *Kirby v. Sullivan,* 923 F.2d 1323, 1326 (8th Cir.1991); *Sobania v. Secretary of Health & Human Services,* 879 F.2d 441, 444 (8th Cir.1989).

■ When conducting its review, the Court employs a "scrutinizing analysis" that balances the supporting and contradictory evidence on the record. *Gavin v. Heckler,* 811 F.2d 1195, 1199 (8th Cir. 1987). As noted, this requires more than a search for evidence that supports the Commissioner's decision. *Id.* The Court must review the entire record and weigh all evidence that fairly detracts from the Commissioner's findings. *Cruse v. Bowen,* 867 F.2d 1183, 1184 (8th Cir.1989).

■ When determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider:

1) the credibility findings made by the ALJ;

2) the plaintiff's vocational factors;

3) medical evidence from treating and consulting physicians;

4) the plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments;

5) any corroboration by third parties of the plaintiff's impairments; and

6) the testimony of vocational experts that is based upon a proper hypothetical questions setting forth the plaintiff's impairment.

*Baker v. Secretary of Health and Human Services,* 955 F.2d 552, 555 (8th Cir.1992).

■ The substantial evidence standard "allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala,* 30 F.3d 934, 939 (8th Cir.1994). In other words, while the Court may weigh evidence differently, it cannot reverse a Commissioner's decision if there is sufficient evidence in the record to support either outcome. *Id.*

## V. LEGAL DISCUSSION

Heinrick contends that the ALJ erred as a matter of law in that he failed to develop the record and discounted the opinions of treating physicians without first requesting additional information or seeking clarification from those physicians. Heinrick also takes issue with the ALJ's credibility assessment and asserts that her subjective pain complaints are borne out by the objective medical evidence.

### A. OBJECTIVE MEDICAL EVIDENCE

Medical records dated January 19, 2000, reveal that Heinrick had responded favorably with medication and that her depressive and anxiety disorders were "both in good resolution and control." (Tr. 240–41). Medical records dated July 10, 2000, state that Heinrick's depressive and anxiety disorders were under "excellent control." (Tr. 238–39).

Dr. James Nabwangu examined Heinrick in March 2000. (Tr. 226–227). He opined that Heinrick, while likely suffering from irritation perhaps at the L–5 nerve root, was in no acute distress, exhibited no significant radicular compression, and was not a surgical candidate. (Tr. 226–227). Heinrick was treated by Dr. Catherine Hawethorne on March 3, 2000. Dr. Haw-

ethorne found that Heinrick suffered from small disc herniations at L4–5 and L3–4. (Tr. 258).

Heinrick was subsequently treated by Dr. James Lampman. (Tr. 283). Dr. Lampman's notes dated August 10, 2000, document Heinrick's muscoskeletal discomforts. (Tr. 287–290). These notes also indicate that Dr. Lampman provided Heinrick with a favorable prognosis in terms of long-term coping and the likelihood that her discomfort would lessen as the years go on. (Tr. 290). Dr. Lampman's notes of September 13, 2000, again document Heinrick's prolonged pain complaints while noting that her general health had stabilized. (Tr. 285). These notes also indicate that Dr. Lampman was optimistic about Heinrick's long-term prognosis but recognized that the impact of her condition(s) upon her functioning level in the present was significant. (Tr. 286).

Heinrick was referred to Unimed Medical Center South in September 2000 for outpatient evaluation and treatment for right piriformis. (Tr. 251–55). Physical therapy progress notes dated September 28, 2000, note that Heinrick was beginning to feel better following physical therapy, had seen slight improvement, and was doing stretching exercises at home. (Tr. 251). Progress notes dated October 9, 2000, report that Heinrick had complaints of pain in her left knee, that she had intermittently had problems with her knee following a motorcycle accident, that she believed her iontophoresis treatment had helped to alleviate some her right buttock pain, and that she had experienced less heel pain. (Tr. 249, 321–322). In addition, these notes reveal that Heinrick was continuing to perform stretching exercises and had exhibited improved flexibility. (Tr. 249–250). Progress notes dated October 12, 2000, reveal that Heinrick had been responsive to treatment and that she was

having no problems with her stretching exercises. (Tr. 248). Progress notes dated October 19, 2000, disclose that Heinrick's left knee pain had flared up secondary to doing a lot of pheasant hunting and a lot of walking over uneven ground. (Tr. 246–47). These notes went on to state that Heinrick had been participating in outpatient physical therapy, that she was independently doing her home stretching exercises, that therapy had helped to alleviate the pain in her piriformis areas, that her range of movement in her hip and torso had exhibited improvement, and that she would seek further consult with her primary care provider in regards to her left knee. (Tr. 247–48).

Dr. Shelly Killen's notes of December 22, 2000, disclose that piroformis therapy had helped and, aside from the fact that Heinrick was favoring one leg, she seemed to be doing okay. (Tr. 317). In his notes dated December 26, 2000, Dr. Lampman opined that Heinrick was suffering from an assortment of aches and pains that had severely "impact[ed] on her daily life and employability (as a dental assistant)...." (Tr. 284).

Medical records of January 22, 2001, reveal that Heinrick received treatment for gallstones. (Tr. 305). Records dated February 28, 2001, reveal that Heinrick sought treatment following complaints of knee pain. (Tr. 313). Heinrick underwent knee surgery on April 14, 2001. (Tr. 311–312). In subsequent follow-up examinations, Heinrick complained of increased piriformis pain, low back pain, and an inability to perform her stretching exercises due to decreased range of motion in her knee. (Tr. 315–16).

Taken as a whole, the medical records reveal that Heinrick was responsive to treatment. (Tr. 52, 189–193, 196, 199, 200, 246–255, 317). For example, Heinrick reported on March 1, 2000, that she was

"probably 50% better and [had] gotten up to 50 on all exercises, including the sit ups." (Tr. 196). In addition, Dr. Lampman stated in August and September 2000 that Heinrick's long-term prognosis was favorable. (Tr. 286, 290). Notably, none of Heinrick's treating physicians imposed any significant restrictions on Heinrick's activities.

Although Heinrick did undergo arthroscopic surgery on her left knee, her surgeon, Dr. David Larsen, was of the opinion that her knee symptoms would improve in time. (Tr. 311–312). Notably, Dr. Larsen reported that Heinrick was exhibiting an improvement in her range of motion within thirteen days of surgery. (Tr. 310).

The record also reveals that Heinrick's anxiety and depressive disorders responded well to treatment. (Tr. 242). Medical reports indicate that Heinrick's disorders were in good resolution. (Tr. 241–242). In addition, Heinrick herself reported that her symptomology had resolved. (Tr. 241–242).

## B. SUBJECTIVE PAIN COMPLAINTS

While an ALJ must consider a plaintiff's subjective complaints, the mere

fact that working may cause pain or discomfort does not require a finding a disability. See *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir.2000); *Cruse v. Bowen*, 867 F.2d 1183, 1186 (8th Cir.1989). Courts generally afford great deference to the ALJ's credibility assessments when the ALJ has seriously considered, but for good reason expressly discredits, a claimant's subjective complaints, and those reasons are supported by substantial evidence on the record as a whole. See *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir.1999); *Brockman v. Sullivan*, 987 F.2d 1344, 1346 (8th Cir.1993).

The record reveals that the ALJ considered Heinrick's alleged pain in accordance with the criteria outlined by the by the Eighth Circuit in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir.1984).[1] Applying these guidelines to the evidence the ALJ concluded that Heinrick's testimony was not credible to the extend alleged. Having reviewed the record itself, the Court concludes that the ALJ's conclusion is supported by substantial evidence.

An examination of the record does reveal discrepancies between Heinrick's al-

1. In *Polaski v. Heckler*, the Eight Circuit Court of Appeals stated the following with respect to the manner in which subjective pain complaints are to be analyzed:

   A claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment. . . . While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.

   The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
   1. the claimant's daily activities;
   2. the duration, frequency and intensity of the pain;
   3. precipitating and aggravating factors;
   4. dosage, effectiveness and side effects of medication; and
   5. functional restrictions.
   The adjudicator is not free to accept or reject the claimant's subjective complaints.
   739 F.2d at 1321–22.

leged pains and the medical records. For example, Heinrick complained of heel problems. However, records dated August 10, 2000, state that on examination Heinrick was negative for subclacaneal or plantar fascia tenderness and that her gait was normal. Notably, no mention was made of heel pain in the medical records dated February 9, 2001, and May 25, 2001. With respect to the carpel tunnel syndrome, it should be noted that Dr. Lampman found Heinrick's elbows, wrists, and hands to be fine during a December 26, 2000, examination. With respect to the Heinrick's anxiety and depressive disorders, all indications are that they were effectively managed with medication.

There is little doubt that Heinrick has suffered and continues to suffer through bouts of piriformis pain. Nevertheless, the medical evidence indicates that Heinrick responded reasonably well to cortisone injections, prescription medication, physical therapy, and exercise. Given this evidence the ALJ was permitted to discount Heinrick's subjective complaints. See *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir.2000). In sum, the ALJ properly considered the totality of the evidence in making his credibility determination. See *Burns v. Sullivan*, 888 F.2d 1218, 1219 (8th Cir.1989). This Court must give deference to the credibility determinations made by the ALJ. The record as a whole supports the ALJ's decision that Heinrick's subjective complaints of disabling symptoms were not entirely credible.

## C. ABILITY TO PERFORM PAST RELEVANT WORK

■■ The ALJ recognized that Heinrick's condition precluded her from returning to her previous jobs as a dental hygienist and a store manager. However, based upon his finding coupled with the testimony of the vocation expert, the ALJ determined that Heinrick could return to her past relevant work as either an accounts payable clerk or a telemarketer. The burden ultimately falls upon the claimant to show that she is incapable of performing all of her past relevant work. See *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Ingram v. Chater*, 107 F.3d 598, 604 (8th Cir.1997).

A Residual Functional Capacity Assessment dated May 29, 2001, shows that Heinrick was (1) able to lift 20 pounds occasionally and 10 pounds frequently; (2) able to stand and/or sit for 6 hours in an 8–hour workday; (3) able to push and/or pull without observable limitation; (4) subject to occasional postural limitations. (Tr.329–336). Based upon his review of this assessment in conjunction with the ALJ's hypotheticals, the vocational expert opined that Heinrick remained capable of performing work as a either a telemarketer or accounts receivable clerk, both considered light work under the Social Security Administration's guidelines. Viewing the record as a whole, the ALJ agreed with this assessment. This Court finds that the ALJ's conclusion is supported by substantial evidence.

## D. WEIGHT GIVEN TO OPINIONS OF TREATING PHYSICIANS

■ Finally, Heinrick takes issue with the ALJ's decision to discount statements made by her treating physicians concerning her ability to work full-time. In a letter dated November 2, 2001, Dr. Marcel Young opined that Heinrick was a candidate for disability. (Tr. 368). In a letter dated November 3, 2001, Dr. Killen opined that it remained difficult for Heinrick to perform daily activities secondary to her multiple problems and that it was "unlikely that she would be able to hold down full time employment especially in her previous position as a dental hygienist." (Tr.

369). In a letter dated November 10, 2001, Dr. Lampman opined that Heinrick suffered from "musculoskeletal ailments that prevent her from managing and enduring sustained full-time, work place activities." (Tr. 370).

"[S]tatements that a claimant could not be gainfully employed are not medical opinions but opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir.2002). Thus, as the ability to work is an issue outside the domain of the physician's area of expertise, the weight afforded to their opinions on this issue is properly left to the ALJ's discretion. It is clear that the ALJ did give consideration to these opinions, but concluded that they were not entirely consistent with the medical records and were based primarily upon Heinrick's subjective complaints. It should be noted that none of the treating physicians placed any significant functional limitations or restrictions on Heinrick.

## VI. CONCLUSION

The Court find that there is substantial evidence in the record to support the Commissioner's decision that Heinrick did not meet the disability requirements of the Act. As such, the Court AFFIRMS the ALJ's decision, DENIES Heinrick's Motion for Summary Judgment (Docket No. 7), and GRANTS the Defendant's Motion for Summary Judgment (Docket No. 6).

IT IS SO ORDERED.